521 F.Supp. 1 (1980)
Tasco P. ANTHAN, Plaintiff,
v.
PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION, et al., Defendants.
No. 77-1068C(A).
United States District Court, E. D. Missouri, E. D.
June 23, 1980.
Opinion on Punitive Damages August 10, 1981.
*2 Louis, Gilden, Charles R. Oldham, St. Louis, Mo., for plaintiff.
Barry J. Levine, St. Louis, Mo., Kenneth E. Conklin, Washington, D. C., for defendants.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on plaintiff's motion for summary judgment on the issue of liability on Count III of the amended complaint against defendant, Professional Air Traffic Controllers Organization (hereinafter referred to as PATCO).
Plaintiff's motion for summary judgment is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that there exists no genuine issue as to any material fact. Attached to plaintiff's motion, and in support thereof, is an affidavit by Charles R. Oldham, to which is attached a copy of the transcript of an administrative hearing (Plaintiff's Exhibit A), an administrative law judge's recommended decision and order (Plaintiff's Exhibit B), a decision and order by an Assistant Secretary of Labor for Labor-Management Relations (Plaintiff's Exhibit C), a notification that the Federal Labor Relations Council has sustained the Assistant Secretary's decision (Plaintiff's Exhibit D), a copy of certain notices which PATCO was required to post (Plaintiff's Exhibit E), a copy of PATCO's letter notifying the Department of Labor that appropriate steps had been taken to comply with the posting requirements (Plaintiff's Exhibit F), and a copy of the letter notifying PATCO that the administrative case was closed (Plaintiff's Exhibit G). No affidavits or exhibits were filed by PATCO in opposition to plaintiff's motion for summary judgment.
According to established principle, once a motion for summary judgment is made the Court examines the evidence, not to decide issues of fact which may be presented, but rather to determine if any real issue exists. Doza v. American National Ins. Co., 314 F.2d 230, 232 (8th Cir. 1963). As interpreted by the courts, Rule 56 places on the moving party "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material lodged must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, Rule 56(e) provides in part:
"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
See, Beckers v. International Snowmobile Industry Ass'n, 581 F.2d 1308, 1311 (8th Cir. *3 1978), cert. denied, 440 U.S. 986, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979).
Count III of plaintiff's amended complaint alleges that the defendants, including PATCO, maliciously and intentionally attempted to interfere with the employment relationship of plaintiff with the Federal Aviation Administration by harassing plaintiff, by refusing to cooperate with plaintiff in early descents, by shunning him, by requesting not to work with him, by refusing to talk to him and by directing departing aircraft into the path of a descending plane controlled by plaintiff, thereby making his job more difficult and affecting his performance on the job and by attempting to have plaintiff fired, demoted or denied future promotions by calling him a dangerous controller, by filing false charges against him and by making threats to him. Plaintiff further alleges that he has suffered great mental anguish by reason of the acts of defendant and that he has been greatly humiliated. Plaintiff alleges that a decision and order by Francis X. Burkhardt, Assistant Secretary of Labor-Management Relations, which was sustained by the Federal Labor Relations Council, considered the issues involved in Count III and found adversely to PATCO. Plaintiff contends that he is entitled to a summary judgment because of the res judicata effect of the administrative decision and order.
The Supreme Court in United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), stated:
"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." Id. at 422.
Plaintiff and PATCO were parties in the administrative proceeding. The proceeding was conducted in an adversary fashion: Witnesses were examined and cross-examined, evidence introduced, and the issues briefed.
The following findings of fact were made by the administrative law judge and adopted by Assistant Secretary of Labor Burkhardt. Plaintiff began working for the Federal Aviation Administration in 1966. In 1968 he was accepted at the Kansas City Municipal Air Traffic Control Tower. On June 10, 1974, plaintiff transferred to St. Louis and asked to be assigned to Dennis Reardon for training, as he had known Reardon in Kansas City.
Reardon was president of PATCO Local 352 from July 1, 1974, to June 30, 1975, a member of PATCO's Regional Constitution Committee, a member of PATCO's Regional Negotiating Committee, and PATCO's facility representative at the St. Louis Tower. Plaintiff joined PATCO before transferring to St. Louis and remained a member until approximately July 9, 1975.
Initially plaintiff's relations with Reardon and other members of PATCO were friendly. However, plaintiff later disagreed with Reardon's approach to labor-management relations and as a result plaintiff was shunned by certain of the controllers and a marked lack of coordination and cooperation developed between plaintiff and certain controllers, including Reardon, Rick Regenhold and Tom Ferring, all of whom were among the leaders of PATCO's Local 352.
The lack of coordination and cooperation in air traffic control was through delay in responding to plaintiff's requests, repeated requests to "say again," denial of plaintiff's requests for entry of aircraft into their controlled air space, and denial of plaintiff's requests for early descent, all of which actions adversely affected plaintiff's ability to move air traffic and greatly intensified the pressure on plaintiff as an air traffic controller. On one occasion when plaintiff's request for a descent had been denied, he "just kind of threw up his hands in frustration."
On another occasion when plaintiff requested an early descent, Reardon told Lyle Bjerkestrand, the team supervisor, that if Bjerkestrand did not take action to stop requests for early descent Reardon was going *4 to make an issue of the point. Bjerkestrand replied that it was perfectly proper to request early descent because it expedited the flow of traffic.
On June 25, 1975, plaintiff was working as an arrival controller and Rick Regenhold was working as a departure controller. The arrival controller was assigned air space at 6,000, 7,000 and 8,000 feet, departures were restricted to 5,000 feet in order to avoid climbing through an arrival track. There was a thunderstorm to the northwest of the airport, along the final approach course for Runway 12-Right, and arriving aircraft were urgently requesting deviations to avoid having to penetrate the storm.
TWA 876 was approaching the airport under plaintiff's control and requested a lower altitude. Plaintiff sought permission for TWA 876 to reduce its altitude to 4,000 feet, into air space controlled by Regenhold. Regenhold asked plaintiff to repeat the request and then approved it. Plaintiff instructed TWA 876 to descend and maintain 4,000 feet. In the meantime, Regenhold directed a departing flight, Frontier 23, to ascend to 5,000 feet in the area previously approved by him for TWA 876. Plaintiff saw the position of Frontier 23 on his radar console and immediately ordered TWA 876 to maintain 6,000 feet. Plaintiff complained to Thomas Jones, the team supervisor for that shift, and Jones told Regenhold to keep his departures out of the area that plaintiff needed.
On June 29, 1975, plaintiff asked Reardon what he thought of the June 25th incident. Reardon replied that he did not think there was anything wrong with it, that he had heard reports that plaintiff was a dangerous controller, and furthermore that plaintiff would get his in the end.
On June 30, 1975, plaintiff brought to the attention of Don D. Early, Chief of the St. Louis Tower, the events of June 25th. Early met with Reardon and Reardon implied that less than standard separations had existed on June 25th (that is, a systems error). When Early asked specifically about the matter, Reardon said that he was not stating that there had been less than standard separations of aircraft, just that it was a bad operation. Early directed the Operations Officer, Ivan F. Hunt, to investigate the charge. After completing his investigation, Hunt concluded that there had been no systems error, but that there were alternatives available to Regenhold, based on the traffic situation at that time, which would have been preferable to the action he chose.
After reviewing the evidence, Assistant Secretary of Labor Burkhardt concluded that PATCO, through the actions of its agents, had engaged in a pattern of conduct, culminating in the June 25th and June 29th incidents, designed to coerce plaintiff into cooperating with PATCO, or to punish him for his refusal to do so. Burkhardt also concluded that said acts violated § 19(b)(1) and (3) of Executive Order 11491.
On January 13, 1978, the Federal Labor Relations Council sustained Burkhardt's decision. PATCO did not appeal the council's decision.
Plaintiff contends that because of the res judicata effect of the administrative decision he is entitled to a partial summary judgment on the issue of liability on Count III. The Court reads Count III of plaintiff's amended complaint as alleging a cause of action based upon harassment. The Missouri courts recognize a cause of action for harassment which is known as "outrageous conduct." Missouri has adopted § 46 of the Restatement (Second) of Torts, which provides:
"§ 46. Outrageous Conduct Causing Severe Emotional Distress.
"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, for such bodily harm."
Pretsky v. Southwestern Bell Telephone Co., 396 S.W.2d 566, 568 (Mo.1965), Smith v. Standard Oil, Div. of Amoco Oil Co., 567 S.W.2d 412, 415-416 (Mo.App.1978), Hood v. Naeter Bros. Pub. Co., 562 S.W.2d 770, 770-771 (Mo.App.1978).
*5 A pattern of delay and denial of plaintiff's requests for entry of aircraft into controlled air space for the purpose of harassing plaintiff is in itself outrageous conduct. However, the incident on June 25, 1975, in which Regenhold ordered Frontier 23 into an area previously approved by him for TWA 876, a flight which plaintiff was controlling, is so extreme in degree that it is beyond all possible bounds of decency. That Regenhold should attempt to create a systems error in order to get back at plaintiff is utterly intolerable. When plaintiff confronted Reardon with the June 25th incident Reardon replied that he saw nothing wrong with the operation and then labeled plaintiff a dangerous controller who would get his in the end. Reardon's behavior, in light of the previous conduct of PATCO's agents, is also outrageous.
These acts were intended to and did indeed greatly intensify the pressure on plaintiff so as to cause him severe emotional stress and thereby punish him for opposing certain policies of Reardon.
The Court concludes that issues of fact as determined in the administrative proceeding establish that plaintiff is entitled to a judgment of liability against PATCO for the tort of outrageous conduct, intentionally or recklessly causing severe emotional distress.
Accordingly, plaintiff's motion for summary judgment against PATCO as to liability on Count III of the amended complaint is sustained and summary judgment is granted. The clerk of the Court will prepare and enter the proper order to that effect.

ON DAMAGES
This matter is before the Court for assessment of damages allegedly suffered by plaintiff as a result of incidents at St. Louis' Lambert Field (hereinafter referred to as Lambert) on June 25 and June 29, 1975.
In Count III of his amended complaint plaintiff alleged that on June 25 and June 29, 1975, the defendant, Professional Air Traffic Controllers Organization (hereinafter referred to as PATCO), disrupted his employment with the Federal Aviation Administration (hereinafter referred to as FAA). The parties had previously litigated this alleged interference in evidentiary hearings before the Assistant Secretary for Labor-Management Relations, United States Department of Labor (hereinafter referred to as Secretary), Case No. 62-4631-(CO). This Court granted summary judgment on Count III, finding that defendant's conduct constituted the tort of "outrageous conduct" and that plaintiff was entitled to summary judgment on issues of liability with respect to Count III.
While the question of liability was disposed of by the summary judgment it was necessary to produce some proof with respect to the incidents in this trial on the amount of damages since punitive damages were sought.
Upon careful consideration of the testimony and exhibits, the Court finds that plaintiff is entitled to $165,000.00 in compensatory damages and $650,000.00 in punitive damages.
The background facts are as follows:
On June 25, 1975, plaintiff was employed by the FAA as an air traffic controller at Lambert. Plaintiff worked at controller position AR-2, which is responsible for arrival traffic from the south and southwest. Another controller, Rick Regenhold, was responsible for departure traffic toward the south and southwest at position DR-2. Airspace was divided between plaintiff and Regenhold by altitude so as to avoid collisions.
Both plaintiff and Regenhold were members of PATCO. Regenhold was PATCO's "team representative" in St. Louis, an elective post responsible primarily for grievance adjustment.
Due to a thunderstorm to the northwest of Lambert many arriving aircraft requested permission to deviate from the normal landing approach. Plaintiff thought it best for one arriving aircraft, TWA Flight 876, to reduce its altitude from six thousand feet (plaintiff's designated airspace) to four *6 thousand feet (Regenhold's airspace) to avoid the storm. Accordingly, plaintiff "co-ordinated" (communicated) with Regenhold to arrange for TWA's Flight 876 descent into Regenhold's airspace. Regenhold approved the descent of TWA Flight 876 notwithstanding the fact he had moments earlier ordered one of his departing flights (Frontier Flight 23) to ascend to five thousand feet through the same airspace. Plaintiff immediately noted a potential collision, ordered TWA Flight 876 to maintain six thousand feet, and complained to his supervisor, Thomas Jones.
On June 29, 1975, plaintiff discussed the June 25th incident with Dennis Reardon, then president of the St. Louis chapter of PATCO, and a witness to the incident. Reardon told plaintiff that he found nothing improper with actions taken, that he had heard reports that plaintiff was a dangerous controller, and that plaintiff would get his in the end.
As a result of these incidents and other conduct by defendant, plaintiff alleges that he developed an emotional or mental illness, that he was forced to leave St. Louis (to his financial detriment), and that he was ultimately rendered incapable of working as an air traffic controller. Defendant alleges that plaintiff developed no such illness, that plaintiff's departure from St. Louis was to his career's advantage, and that plaintiff ultimately lost his career in air traffic control through his own fault.
The credible evidence showed that plaintiff's personality changed radically after June 25, 1975, and that defendant's conduct on the dates in question was the cause. Whereas plaintiff had previously been a jovial, carefree and friendly person, he became withdrawn, moody and suspicious and his interpersonal skills deteriorated very badly after his transfer from St. Louis to Omaha in August, 1976. Defendant's suggestion that plaintiff's problems were the product of retaliation by others for his obnoxious behavior mistakes the manifestation of emotional or mental injury for its causation and flies in the face of evidence showing plaintiff well able to cope with the stress of aviation, air traffic control, and life in general prior to June, 1975. While the expert witnesses did not unanimously hang a particular label on plaintiff's condition, the credible testimony showed both an injury and a relation between that injury and the incidents in June of 1975.
Defendant notes that on September 16, 1979, plaintiff suffered a concussion and cervical sprain in a fall in Omaha. This accident was unrelated to defendant's conduct. Plaintiff never returned to work as an air traffic controller after the fall because he suffered headaches for which he took medication which disqualified him from air traffic control, and further because he feared pressure and tension by returning. Defendant contends that since the incident in September of 1979 is unrelated to the incident in June of 1975, plaintiff cannot recover against it for injuries suffered in and after September, 1979.
Under Missouri law plaintiff may not recover against defendant for injuries caused by a tortious act of another that is "widely separated as to time and distance" and is identifiable "with some definiteness" to that other act. Barlow v. Thornhill, 537 S.W.2d 412, 418 (banc 1976). Accordingly, defendant may not be held liable for injuries identified with some definiteness to plaintiff's 1979 fall. Inasmuch as the credible evidence showed that the injuries in September of 1979 (a concussion and cervical sprain) were distinct from the injuries in June of 1975 (post-traumatic stress disorder or adjustment disorder with emotional features), their only relation being that the 1979 events bring plaintiff's 1975 injuries to recognition and that the 1975 injuries continued beyond September, 1979, the Court finds that the 1979 incident does not absolve defendant of responsibility for plaintiff's emotional or mental injuries.
Defendant contends that plaintiff may not recover for emotional or mental injury because he sought no medical attention until after September, 1979. This is speculative inasmuch as the Court has no way to determine whether any alleged aggravation was due to defendant's harassment *7 after the incidents of June, 1975, or was due to plaintiff's failure to seek attention. Given the tense atmosphere after June of 1975 brought on by the investigation by FAA of the incidents, defendant's smear campaign against plaintiff and St. Louis FAA officials, and plaintiff's Unfair Labor Practice complaint and proceedings, this Court finds that plaintiff did not act unreasonably in attempting to avoid unfortunate stigmas associated with the professional help he needed.
The record showed that plaintiff was treated for his emotional or mental injuries. The credible evidence showed that this injury has significantly altered plaintiff's life, causing him to change careers, drop various hobbies, and live in a state of fear.
Plaintiff contends that he is entitled to compensation for the reduction in salary he took when he transferred from St. Louis to Omaha in August, 1976. However, the evidence showed that plaintiff's transfer was a "career progression" in FAA employment and that it was common for FAA promotions to feature increased responsibility with a reduction in pay. This Court cannot find that plaintiff's air traffic control career was harmed through his transfer to Omaha.
Plaintiff is entitled, however, to compensation for expenses incurred due to the timing of his transfer to Omaha. The evidence showed that plaintiff was run out of St. Louis by ostracism and hostility from St. Louis PATCO members and officers, and unrebutted evidence showed that plaintiff was forced to sell his house at a loss of six thousand dollars.
Plaintiff contends that he is entitled to compensation for the loss of salary which will accompany his imminent change of career (from air traffic control to teaching). However, the evidence showed that plaintiff has not yet completed the training necessary to become a teacher and that there is no date certain when plaintiff will commence teaching.
For the reasons given above, the Court finds that plaintiff is entitled to $165,000.00 in compensatory damages.
Defendant correctly notes that it is entitled to address the circumstances of the incident of June 25, 1975, in mitigation of punitive damages. Upon careful review of the evidence, however, the Court finds that plaintiff acted properly on June 25, 1975, insofar as the incident is concerned, and that Rick Regenhold willfully and wantonly manufactured a dangerous air traffic control incident.
Defendant contends that certain transcripts of controller communications during the incident show that plaintiff incompletely coordinated the descent of TWA Flight 876 and that testimony by various controller witnesses show that plaintiff negligently caused said incident. This Court finds that defendant's reliance on the transcripts is misplaced and that the testimony of its controller witnesses was not credible.
FAA air traffic control guidelines provide that all statements by and to air traffic controllers are recorded. Absent any allegations of abnormal air traffic incidents, the tapes are erased and re-used for daily recordings. In the instant case, the tapes of June 25th were transcribed after allegations by PATCO that a systems error or deviation (incident) occurred, and they were erased after an investigation by Ivan Hunt of the FAA revealed no violation of official air traffic control standards.
The transcripts of June 25th available at trial were rather short excerpts from the tape and were neither official nor accurate transcripts. The transcript of plaintiff's position (AR-2) features a crucial handwritten correction in a suspect manner. The transcript of Regenhold's position (DR-2) omits a statement or statements by Regenhold at a crucial time. One statement by Regenhold appears on plaintiff's transcript (at 1756:25) but does not even show on Regenhold's transcript. Accordingly, the Court places little reliance upon these transcripts.
Viewing the transcripts for what they are worth, the Court does not find sufficient evidence to support defendant's contention *8 that Regenhold never approved plaintiff's early descent of TWA Flight 876. The improper gap on Regenhold's transcript comes at almost the exact time that plaintiff's transcript shows Regenhold approving the early descent of TWA Flight 876. That plaintiff may have violated a rule requiring that he also gain approval from the TCA-2 controller (Mel Wise) for the descent of TWA Flight 876 does not lessen the gravity of Regenhold's action.
Defendant produced testimony by Regenhold, Reardon, Wise and Richard Stevens (the AR-1 controller) to show that plaintiff caused the incident of June 25, 1975, by improper coordination with other controllers. However, these witnesses' accounts are in sharp contrast to the accounts of plaintiff and Thomas Jones. This Court accepts plaintiff's version of the incident. At that time Regenhold and Reardon were the team representative and president, respectively, of an organization that regularly mixed union politics with job performance and outside activities. Furthermore, Regenhold's explanation for routing Frontier Flight 23 into a thunderstorm was not credible, and this Court does not accept as credible the testimony of Wise and Stevens, who for the first time some six years after the incident gave testimony exonerating defendant, although as a result of the incident an evidentiary hearing had been held by the Department of Labor soon after the incident occurred.
The record shows that in and around June of 1975 plaintiff, PATCO, and St. Louis FAA officials disagreed over certain professional matters of air traffic control and that PATCO pressed its side in the debate by coercive actions on the job and by harassment outside of work against plaintiff and other employees. Inasmuch as the incidents of June 25 and June 29, 1975, fall within the pattern of PATCO's prior and subsequent conduct, the Court finds that they were willful and wanton acts. Defendant denies not that the acts were willful, but that they even occurred; the evidence (both findings of the Secretary and evidence before this Court) shows otherwise. Accordingly, the Court finds that plaintiff is entitled to $650,000.00 in punitive damages.
For the reasons given above the Court finds that plaintiff is entitled to $165,000.00 in compensatory damages and $650,000.00 in punitive damages.
The Court adopts this memorandum opinion and its memorandum and order of June 23, 1980, granting summary judgment for plaintiff, as its findings of fact and conclusions of law. The clerk of the Court is hereby directed to enter the proper judgment.