Taso P. ANTHAN, Appellee,

v.

PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION, affiliated with Marine Engineers Beneficial Association, AFL–CIO, Appellant.

No. 81–1945.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1982.
Decided March 19, 1982.

Gruenberg, Souders & Levine, Barry J. Levine, St. Louis, Mo., Leighton, Conklin, Lemov, Jacobs & Buckley, Kenneth E.

Conklin, Gary Ethan Klein, Washington, D. C., for appellant.

Louis Gilden, Charles R. Oldham, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ROSS and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Anthan worked as an air traffic controller in St. Louis and was a member of the Professional Air Traffic Controllers Organization (PATCO) until approximately July 9, 1975. While in St. Louis Anthan disagreed with the approach of the PATCO local to labor-management relations. As a result, Anthan was shunned by some of the controllers and received a marked lack of cooperation and coordination. On June 25, 1975, a member of PATCO, Regenhold, deliberately attempted to cause a systems error with the potential of a mid-air collision. On June 29, 1975, Reardon, president of the PATCO local, told Anthan that there was nothing wrong with the June 25th incident, that he had heard reports that Anthan was a dangerous controller, and that Anthan would "get" his in the end. Soon thereafter Anthan filed an unfair labor practice complaint (ULP) against PATCO. A two-day ULP hearing was held by an administrative law judge (ALJ) of the United States Department of Labor in July 1976. At the hearing the ALJ found substantial evidence of outrageous conduct by PATCO agents. On review the Assistant Secretary of Labor agreed. The ALJ and the Assistant Secretary of Labor found that PATCO, through the actions of its agents, had engaged in a pattern of conduct designed to coerce Anthan into cooperating with PATCO or to punish him for refusal to do so. On January 13, 1978, the Federal Labor Relations Council affirmed the decision and PATCO posted the required notice of compliance.

In October 1978, Anthan filed a three-count amended complaint against PATCO in federal district court. Count III of the complaint alleged that PATCO attempted to interfere with Anthan's employment re-

lationship with the Federal Aviation Administration (FAA). Anthan further alleged that he had suffered great mental anguish. On February 12, 1980, Anthan filed a motion for summary judgment on the issue of liability on count III. The motion labeled count III "action for tortious interference with plaintiff's employment." Anthan presented affidavits and evidence and argued collateral estoppel as to liability on count III because of the findings at the administrative level.[1] The district court construed count III as alleging a cause of action for outrageous conduct, intentionally or recklessly causing severe emotional distress.[2] The court found substantial evidence of outrageous conduct by PATCO. The court concluded that the issues of fact as determined in the administrative hearing established that Anthan was entitled to a judgment of liability against PATCO for the tort of outrageous conduct, intentionally or recklessly causing severe emotional distress.

Thereafter, a six-day trial on the issue of damages was held. PATCO attempted to prove to the court that the actions complained of never occurred. Evidence of outrageous conduct and emotional distress was presented at trial. At the end of the trial the court awarded $165,000.00 compensatory and $650,000.00 punitive damages to Anthan. This appeal followed.

On appeal PATCO argues that the trial court erred in construing count III of the complaint labeled "tortious interference with plaintiff's employment" as a cause of action for outrageous conduct. PATCO asserts that the two claims are entirely different. PATCO further contends that the trial court erred in concluding that its liability for outrageous conduct was collaterally estopped by the prior administrative hearing. Thus, it argues the trial court should not have granted summary judgment on count III. Additionally, PATCO argues that the trial court's findings on damages are not supported by the evidence.

*The Pleadings.*

The defendant initially urges that the trial court's judgment under count III was rendered on a theory which was not pleaded by plaintiff. In the complaint plaintiff alleged:

Defendants maliciously and intentionally attempted to interfere with the employment relationship of plaintiff with the FAA by harassing plaintiff, by refusing to cooperate with plaintiff in early descents, by shunning him, by requesting not to work with him, by refusing to talk to him and directing departing aircraft into the path of a descending plane controlled by plaintiff, thereby making his job more difficult and affecting his performance on the job and by attempting to have plaintiff fired, demoted or denied future promotions by calling him a dangerous controller, by filing false charges against him and by making threats to him.

Plaintiff has suffered great mental anguish by reason of the acts of defendants and that he has been greatly humiliated and that he has sustained actual damages in the amount of $5,000,000.00.

The difficulty urged by PATCO is that plaintiff did not characterize or view the complaint as one for outrageous conduct. The motion for summary judgment, the memorandum filed in response, and defendant's counter motion for summary judgment were all directed to plaintiff's tortious interference with employment theory. The trial court nonetheless read all the allegations of the complaint and viewed the complaint in its entirety as sounding in tort based upon outrageous conduct.

■ Plaintiff's motion for summary judgment was based on a claim of collateral estoppel arising from the unfair labor practice hearing before the Department of Labor. The trial court found that liability for the tort of outrageous conduct had been

---

1. Counts I and II were withdrawn by the plaintiff.

2. Under Missouri law this tort is referred to as "outrageous conduct." *See Anthan v. PATCO*, 521 F.Supp. 1, 5 (D.Mo.1981); *United Tel. Co. v. Horn*, 610 S.W.2d 701, 704 (Mo.App.1980).

determined by the adjudicated facts of the administrative hearing and entered a summary judgment on count III on that theory. As we will discuss, we think this was error since not all of the elements of the tort of outrageous conduct were established or adjudicated in the administrative proceeding. Nevertheless, we cannot agree with PATCO that the district court's judgment was outside the pleadings. The complaint clearly alleges the essential elements of outrageous conduct. It is not focused on an employment "contract;" it speaks to outrageous conduct.

The function of pleading under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1215 (1969). The "theory of the pleadings" doctrine, under which a plaintiff must succeed on those theories that are pleaded or not at all, has been effectively abolished under the federal rules. *Id.* at § 1219; *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979). "The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, . . . provided that such a shift in the thrust of the case does not work to the prejudice of the opposing party." *Id.*

The defendant urges that it was surprised and therefore prejudiced by counsel's characterization of his theory before the district court. Although counsel's motion contained misleading language, we do not find ultimate prejudice. Subsequent to the district court's ruling, defendant moved to vacate the judgment and was able to articulate fully its reasons why the grant of summary judgment on liability for outrageous conduct was erroneous. Under the circumstance we find defendant was provided a full opportunity to urge its defense in the

district court. *See Mobil Oil Corp. v. Clark*, 652 F.2d 2 (8th Cir. 1981).

*Collateral Estoppel.*

The trial court found that all the facts necessary for Anthan to prevail on the issue of liability for outrageous conduct were collaterally estopped by the administrative proceedings; thus it found no disputed material facts. PATCO claims that the trial court erred in granting summary judgment on the basis of collateral estoppel.

■ Before an administrative adjudication will constitute collateral estoppel the following prerequisites must be met:

(1) the issue must be identical to one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or is in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir. 1979); *Gerrard v. Larsen*, 517 F.2d 1127, 1130 (8th Cir. 1975).

Missouri follows the Restatement of Torts in recognizing the tort of outrageous conduct. *Pretsky v. Southwestern Bell Tel. Co.*, 396 S.W.2d 566 (Mo.1965). The elements of this tort are: (1) extreme and outrageous conduct; (2) intent or recklessness; and (3) severe emotional distress. Restatement (Second) of Torts § 46 (1965).

To determine whether collateral estoppel was properly applied, we must examine the record to see whether these elements were present and whether PATCO was given a full and fair opportunity to participate in the administrative adjudication.[3]

*Identical Issues.*

"The theory underlying the doctrine of collateral estoppel is that, as between the same parties, an issue need and should be judicially determined only once." 1B J. Moore, *Federal Practice* ¶ 0.443[1] (1980).

---

**3.** There is no doubt that the administrative proceedings are final judgments and that these are the same parties involved in the prior proceedings.

The determination of an issue in an earlier proceeding must be essential to the judgment; it cannot be dicta. It is important that only those issues necessarily decided in the earlier proceeding are collaterally estopped. Vestal, *Issue Preclusion and Criminal Prosecutions*, 65 Iowa L.Rev. 281, 291 (1980).

In holding that PATCO had violated sections 19(b)(1) and (3) of Executive Order 11491, the ALJ made detailed factual findings before concluding that PATCO had coerced, hindered, interfered with, and threatened plaintiff in his performance as a controller. The ALJ found (1) a pervasive pattern of delay and denial of Anthan's requests for entry of aircraft into controlled air space for the purpose of harassing plaintiff, (2) a deliberate attempt of PATCO members to cause a systems failure to "get at" Anthan, (3) a labeling of plaintiff as a "dangerous" controller, and (4) threats that plaintiff would "get his in the end." The ALJ found that PATCO's activities affected Anthan's ability to move air traffic and greatly intensified the pressure on plaintiff as an air traffic controller.

■ We find the elements of outrageous conduct and intent or recklessness were involved in the Unfair Labor Practices hearing. Indeed, the factual determinations necessary to the finding that PATCO violated Executive Order 11491 are also the factual determinations necessary to the finding of those elements. The determination that the systems failure was deliberate was an integral part of the ALJ's decision that PATCO had coerced Anthan to cooperate with the union or punished him for his refusal to comply. The issue whether such an attempt occurred was clearly before the ALJ. Nor is there any doubt that Regenhold and other agents knew or should have known that their actions would distress Anthan. The reason for PATCO's actions was also an integral part of the administrative proceedings.

*Full and Fair Opportunity.*

The most crucial question of the analysis is whether PATCO had a full and fair opportunity to litigate the facts underlying the elements of outrageous conduct at the administrative proceeding. The meaning of "full and fair opportunity" in this context is whether PATCO was denied procedural, substantive, or evidentiary opportunities to be heard on those facts. "Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether the application of collateral estoppel will work an injustice on the party against whom estoppel is urged." *United States v. Karlen*, 645 F.2d 635, 639 (8th Cir. 1981) (discussing proper use of offensive collateral estoppel). Because we find that PATCO had strong reason to litigate the facts underlying the elements of outrageous conduct and intent or recklessness, we find that PATCO had a fair and full opportunity to litigate the elements. Thus, because these facts were previously at issue and were directly adjudicated, we agree that the facts underlying the elements of outrageous conduct and intent or recklessness are collaterally estopped.

■ However, we reach a different conclusion as to the element of severe emotional distress. Proof of emotional distress is an essential element of the claim. This clearly was not an issue in the administrative proceeding. Where suits are not on the same cause of action, issue preclusion applies only to matters previously at issue and directly adjudicated. *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1299 (8th Cir. 1980). This element does not meet that test and, consequently, is not collaterally estopped. Although there was some evidence in the administrative hearing that Anthan suffered some highly unpleasant mental reaction to the outrageous conduct, "[t]he law intervenes only where the distress ... is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46 comment j (1965). "Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.... It is for the court to determine whether on the evidence severe

emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.*

We thus conclude that the administrative adjudication did not serve to collaterally estop the defendant from contesting proof of whether plaintiff incurred extreme emotional distress.

Plaintiff contends that the motion for summary judgment was properly granted because PATCO did not refute plaintiff's affidavits. PATCO argues that its failure can be attributed to its reliance on the label plaintiff put on his theory and that granting summary judgment would be inappropriate. *See* Fed.R.Civ.P. 56(e). We do not need to consider PATCO's argument because we find nothing in the record at the time of summary judgment which established as *undisputed fact* that plaintiff had suffered such extreme distress as to constitute a basis for undisputed liability on this issue. Plaintiff urges that proof of emotional distress may be inferred from the extreme and outrageous character of defendant's conduct. *See* Restatement (Second) of Torts comment j (1965). We agree. However, this inference is simply evidence and does not establish the predicate proof of emotional distress as a matter of law.

Plaintiff also urges that the issue of outrageous conduct was fully established in the trial for damages since the issues of damages and liability for emotional distress were intertwined. We agree there is great overlap in proof. However, the court as the trier of fact did not decide the liability issue since the court considered that fully adjudicated in the administrative hearing. This was, as we have discussed, error.

Therefore, we hold that the trial court erred in granting summary judgment on the basis of liability. The element of emotional distress must be proved for purposes of liability as well as for damages.

*Damages.*

We note that the parties waived a jury trial and that the issue of damages was tried to the court. Under the circumstances the trial court may evaluate both the issue of liability and damages on the evidence already taken, as well as on any other proofs the parties care to submit on either issue.[4]

In view of our ruling we must vacate the award of both compensatory and punitive damages. We point out, however, that we would be required to remand the issue of damages notwithstanding the liability question. In the event the court faces the damages question on retrial, we make the following observations.

1. *Compensatory Damages.*

Federal Rule of Civil Procedure 52(a) requires that a trial court's award of damages be adequately supported by additional specific subsidiary findings in order to permit the appellate court to exercise its function. *Hysell v. Iowa Public Service Co.*, 534 F.2d 775, 787 (8th Cir. 1976). In *Hysell*, the court cited with approval the following language from *Fuchstadt v. United States*, 434 F.2d 367, 370 (2d Cir. 1970):

[I]n tort actions for damages the pertinent consideration entering into the award as well as the amount allowed for each item should be stated briefly and clearly so that the appellate court can properly appraise the elements which en-

---

4. We note that PATCO waived its right to a trial by jury after the court granted Anthan's motion for summary judgment. This waiver pertained only to the damages issue. On remand, we find that waiver still binding as to damages. *Williams v. Farmers and Merchants Ins. Co.*, 457 F.2d 37, 38 (8th Cir. 1972). However, the issue of severe emotional distress is a new issue to be litigated for the first time on remand. Therefore, if PATCO chooses, it is entitled to a trial by jury on that issue. *Id.*

If PATCO makes a timely demand for a jury trial, the judge should instruct the jury that the issues of outrageous conduct and intent or recklessness have previously been adjudicated, and that in determining whether PATCO is liable, it is to consider only the issue of whether plaintiff incurred severe emotional distress. In the event the jury finds PATCO liable for inflicting severe emotional distress, the court should reassess both the compensatory and punitive damages in light of the existing record and any other evidence the parties may offer.

tered into the award.... Without this information the defendant is unable to properly exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review.

■ The only specific finding that the trial court makes is that plaintiff lost six thousand dollars on the forced sale of his house. The trial court also found that plaintiff incurred medical treatment, but does not cite a dollar figure. Thus, contrary to the requirements of Fed.R.Civ.P. 52(a), the opinion of the trial court does not afford this court an opportunity to review the award of compensatory damages in the amount of $165,000.00. Without specific findings to review, the total damage award appears to be overly generous and thus a remand for itemization, in compliance with Fed.R.Civ.P. 52(a), is particularly appropriate.

2. *Punitive Damages.*

■ The trial court found that plaintiff was entitled to $650,000.00 in punitive damages. The amount of punitive damages "must have some reasonable relationship to the injury inflicted." *Northern v. McGraw-Edison Co.,* 542 F.2d 1336, 1350 (8th Cir. 1976), *cert. denied,* 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544 (1977). The opinion of the trial court does not contain sufficient findings to enable us to determine whether the assessment of punitive damages bears any relationship, reasonable or otherwise, to plaintiff's injury. *See Ogilvie v. Fotomat Corp.,* 641 F.2d 581, 587 (8th Cir. 1981). Thus, we remand to the district court on all issues of damages.

Judgment vacated and remanded for further proceedings.