**S. Edward YANCY, Jr., Appellant,**

v.

**Leon P. McDEVITT; Tighe L. and Denise Hollowell; Robert and Irene Wegehoft; Richard G. and Diana Heller; Michael D. and Diana Hennley; Ronald V. and Charlotte Jasper; Glen H. and Kathy Levetzow; Sharon Lopshire; Dallas L. and Nancy McWilliams; Merle D. and Patricia Vastine; Jerry L. and Yvonne Zier, Appellees.**

No. 85–2365.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1986.

Decided Oct. 2, 1986.

Kent A. Simmons, Davenport, Iowa, for appellant.

Rand S. Wonio, Davenport, Iowa, for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and REGAN,[*] Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

S. Edward Yancy, Jr., appeals from the district court's[1] order granting summary judgment against him on his racial discrimination claims brought under 42 U.S.C. § 1981 and § 1983 and the thirteenth amendment. Yancy was discharged from his teaching position in the Davenport, Iowa, elementary school. A hearing before the school board resulted in a determination that racial prejudice or discrimination was not involved in the decision to terminate him. An appeal to an arbitrator and to the district court for Scott County, Iowa, followed. Both approved his termination. On Yancy's federal claim, the district court held that the issues raised had been determined in the state administrative proceedings and appeal and that the doctrine of issue preclusion barred relief. It further dismissed his claim for intentional infliction of emotional distress as it was barred by the two-year statute of limitations. On appeal Yancy argues that the proceedings before the school board were not adequate to provide a full and fair opportunity to litigate the constitutional issue of racial discrimination and that the parties and issues were not the same as those in his federal claim. We affirm the judgment of the district court.

Yancy, a tenured teacher, taught fifth and sixth graders at Hayes Elementary School in Davenport. Complaints were received from parents concerning Yancy's conduct. The superintendent of the Davenport Community School District finally served on Yancy a notice and recommendation to terminate his continuing employment contract. The school board held a hearing on Yancy's termination. At this

---

[*] The HONORABLE JOHN K. REGAN, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

hearing, the superintendent documented fifty-eight meetings aimed at correcting Yancy's behavior with respect to accusations of intimidation, ridicule, and the demeaning of children, insubordination, and use of inappropriate language. The board made findings on these issues and concluded that his use of ridicule and intimidation in a demeaning manner was sufficiently outside the bounds of proper teaching practices so as to be unreasonable. The board acknowledged that several teachers testified that they believed the termination had racial overtones and that racial slurs against Yancy had been heard. Several teachers also testified that they believed Yancy was the subject of a parental conspiracy that was racially prompted. Yancy stated that he did not want to believe the proposed termination was racially prompted, and the chief school administrator indicated that he did not believe the action was race related. The board found, based on credible and probative evidence, that the proposed termination was not based on race. Designated Record at 68.

After Yancy was terminated by the board, he filed an appeal with an adjudicator as provided by Iowa Code Ann. § 279.-17 (West Supp.1986). The adjudicator affirmed the termination, and Yancy appealed to the state district court pursuant to Iowa Code Ann. § 279.18. In both of these proceedings Yancy raised the argument that he had been terminated for unconstitutional reasons, specifically his race. Neither the adjudicator nor the district court mentioned this issue in the order of affirmance. After the ruling in the district court, Yancy filed a notice of appeal with the Iowa Supreme Court, which he later dismissed.

Yancy then brought this action against the principal of the grade school and a group of parents who testified against him in the termination hearing. The district court concluded that issue preclusion applied as he had a full and fair hearing in an administrative forum. It rejected his argument that the claims of racial discrimination were not litigated in the hearing before the board and on administrative ap-

peal. It pointed to the finding of the school board that racial prejudice or discrimination was not involved in the decision to terminate Yancy and, although the arbitrator or district court did not make a specific finding on these issues, their action in affirming the discharge. *Yancy v. McDevitt*, No. 84–70–D–1, slip op. at 3 (S.D.Iowa Oct. 11, 1985). The court determined that the racial discrimination issue urged before it was identical to the issue raised in the earlier proceedings and that it had been litigated and determined. It opined that Yancy had a full and fair opportunity to present the issue of racial discrimination before the school board and it recited the chain of administrative and judicial proceedings that we have already described.

Yancy makes the same arguments before us that he made in the district court. He argues that the procedures before the school board were not adequate to provide a full and fair opportunity to raise and litigate the constitutional issues of racial discrimination and that the parties and issues were not identical to those before the district court.

As the district court correctly recognized, a federal court must give a state court judgment the same issue preclusive effect as would the courts of the state in which it was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889–90, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). Iowa law therefore governs our decision. The Iowa courts have established four prerequisites to the application of issue preclusion:

(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been neces-

sary and essential to the resulting judgment.

*Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981); *accord Brown v. Monticello State Bank,* 360 N.W.2d 81, 84 (Iowa 1984).

The parties have not drawn to our attention, however, nor have we found, any Iowa cases addressing directly the preclusive effect of a school board hearing. Because we review the district court's entry of summary judgment against Yancy, we give him the benefit of every doubt and allow him every favorable inference that may be drawn from the evidence. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir. 1984).

■ Yancy first argues that the school board hearing was not an adequate forum and did not afford him adequate procedures to litigate his claims of racial discrimination. He relies on *Village Supply Co. v. Iowa Fund, Inc.,* 312 N.W.2d 551 (Iowa 1981). In *Village Supply,* the Iowa Supreme Court declined to give preclusive effect to a small claims court judgment. *Id.* at 554. Yancy contends that the school board termination hearing is analogous to a hearing before the small claims court.

We conclude the district court, however, did not err in finding a "considerable difference" between the procedures in small claims court and those afforded Yancy before the school board. The procedures for terminating a teaching contract are found in Iowa Code Ann. §§ 279.15–.18 (West Supp.1986). Yancy emphasizes and relies on a single paragraph that states: "The board shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure * * *. Process and procedure * * * shall be as summary as reasonably may be." *Id.* at § 279.16. He argues that this paragraph renders the teacher termination procedures the equivalent of small claims court procedures, which are to be conducted "without regard to technicalities of procedure." Iowa Code Ann. § 631.11(1) (West Supp. 1986). However, sections 279.15–.18 provide for a fairly elaborate scheme of notice,

subpoenas, presentation of evidence, cross-examination, decision, and administrative and judicial review. In contrast to the procedures specified for small claims court, *see id.* at §§ 631.11–.13, the parties to a school board hearing are required to exchange lists of witnesses and any documentary evidence they intend to present. *Id.* at § 279.15(2). The parties are permitted to submit written briefs and argument. *Id.* at § 279.16. The board is required to file written findings of fact and conclusions of law "supported by cited authority or by reasoned opinion." *Id.* The board's decision is potentially subject to three levels of review: by an adjudicator agreed upon by the parties, *id.* at § 279.17; by the district court for the county wherein the school district's administrative offices are located, *id.* at § 279.18; and by the Iowa Supreme Court. *Id.* We reject Yancy's contention that the Iowa courts would extend the holding in *Village Supply* to teacher termination proceedings under Iowa Code chapter 279.

■ Nor does the fact that Yancy's termination was litigated before what amounts to an administrative tribunal rather than a court prevent the application of issue preclusion. "A final adjudicatory decision of an administrative agency * * * is entitled to res judicata effect as if it were a judgment of a court." *City of Des Moines v. Iowa Civil Rights Commission,* 343 N.W.2d 836, 839 (Iowa 1984); *Toomer v. Iowa Department of Job Service,* 340 N.W.2d 594, 598 (Iowa 1983). The Supreme Court recently underscored the strength of this rule. In *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Court stated:

> [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," [*U.S. v. Utah Construction & Mining Co., supra,* 384 U.S., [394] at 422 86 S.Ct., [1545] at 1560, [16 L.Ed.2d 642 (1966)], federal courts must give the agency's factfinding the

same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 3227 (footnote omitted).

Comparison of the facts and the decision in *Elliott* with the facts here presented is instructive. The University of Tennessee sought to discharge Elliott, a black employee, for inadequate job performance and misconduct. He requested and received a hearing before a University administrator, at which he contended that his dismissal was racially motivated. The administrator found that the dismissal was not racially motivated, and Elliott appealed to a higher-level administrator.[2] The initial decision was affirmed and he turned to the federal courts claiming that the University's action violated Title VII and 42 U.S.C. § 1983. In the district court, the University successfully contended that the administrative hearing should be given preclusive effect; Elliott's complaint was dismissed. Elliott appealed to the Sixth Circuit and it reversed the district court's entry of summary judgment, holding that the unreviewed factfindings of a state administrative agency are not entitled to preclusive effect under Title VII or the Reconstruction civil rights statutes. 106 S.Ct. at 322–24.

The Supreme Court affirmed the Sixth Circuit as to Elliott's Title VII claim, finding that Congress in enacting Title VII did not intend state agency determinations to have preclusive effect in Title VII actions. *Id.* at 3225. The Court reversed, however, as to Elliott's section 1983 claim. *Id.* at 3227. It "[saw] no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century." *Id.* at 3226. The Court found that "giving preclusive effect to administrative factfinding * * enforce[s] repose." *Id.* Moreover, it "serves the value of federalism." *Id.* The Court held, therefore, that the factfindings of a state administrative agency acting in an adjudicatory capacity are entitled to the same preclusive effect as would be given them by a state court, where a federal court is considering a claim under the Reconstruction civil rights statutes. *Id.* at 3227.

The Court did not determine whether the procedures used in terminating Elliott were adjudicatory. *Id.* at 3227 n. 8. We believe that Yancy's hearing before the school board was adjudicatory. The Iowa courts have looked to section 83 of the *Restatement (Second) of the Law of Judgments*[3] in assessing the quality of adminis-

---

**2.** The administrative procedures available to Elliott were strikingly similar to the procedures involved in Yancy's termination hearing. *See Elliott v. University of Tennessee,* 766 F.2d 982, 985 (6th Cir.1985), *aff'd in part and rev'd in part sub nom. University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Elliott was entitled to and had a hearing before an employee of the University. He had the right to counsel, to notice of the charges against him, to file written motions, briefs, and argument, and to request subpoenas. The order and decision of the administrator included separate findings of fact and conclusions of law. An initial appeal was available within the University; further review was available in the Tennessee courts, limited to the administrative record. The only significant difference we perceive between the Tennessee and Iowa procedures is a statutory limitation of the administrator to the Tennessee Rules of Evidence. This limitation is qualified, however, to allow the administrator to rely on otherwise inadmissible evidence if it is of a type relied upon by reasonably prudent people. *Id.; see* Tenn.Code Ann. §§ 4–5–102 to –323.

**3.** Section 83(2) states:

(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceedings resulting in the determination entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication, * * *

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

trative factfindings. *See, e.g., Kjos v. City of Sioux City,* 346 N.W.2d 25, 28–29 (Iowa 1984); *Toomer,* 340 N.W.2d at 598. The teacher termination procedures in Iowa Code chapter 279 satisfy each of the elements listed in section 83(2). We hold, therefore, that Yancy's termination hearing was adjudicatory in nature. As such, the school board's factfindings are entitled to preclusive effect under *Elliott,* assuming the requirements for issue preclusion articulated by the Iowa court in *Hunter,* 300 N.W.2d at 123, are otherwise met.[4]

■ We turn to Yancy's related contention that he was not afforded "a full and fair opportunity to litigate his constitutional claims." Appellant's Opening Brief at 23. "The meaning of 'full and fair opportunity' in this context is whether [Yancy] was denied procedural, substantive, or evidentiary opportunities to be heard," *Anthan v. Professional Air Traffic Controllers Organization,* 672 F.2d 706, 710 (8th Cir. 1982), on the facts underlying his claim that his discharge was racially motivated. His specific complaint is that the limited investigation he conducted prior to the school board hearing on his termination was not adequate to disclose racial animus, and as a consequence he did not raise and litigate the issue at the hearing. He argues that the facts in *Smith v. Updegraff,* 744 F.2d 1354 (8th Cir.1984), are similar to those presented here, and that our decision in *Smith* is controlling.

In *Smith,* we held that the plaintiff was not precluded from raising a section 1983 claim against his former employer by the prior administrative determination that his dismissal was appropriate. *Id.* at 1362–63. Unlike Yancy, however, the plaintiff in *Smith* did not discover evidence of a constitutional violation until after his dismissal had been administratively and judicially reviewed. Consequently, the factual issues raised in his 1983 action were not considered at the time of his original dismissal. *Id.*

We have thoroughly reviewed the transcript of Yancy's hearing before the school board. Yancy and several of his witnesses testified concerning whether his discharge was racially motivated, whether there was a parental conspiracy to "get" Yancy, and whether the students or their parents were prejudiced against Yancy or other blacks in the school system. *See* Designated Record at 253, 257–60, 262–64, 269–71, 273, 276–79. Yancy's attorney opened the hearing by asking the board members to consider, among other things, whether the school officials applied school policies "without discrimination to all employees." *Id.* at

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*Restatement (Second) of Judgments* § 83(2) (1982).

The comments on section 83 additionally state: The right to obtain judicial review may be regarded as of similar importance, particularly review of questions of subject matter jurisdiction, of the existence of substantial evidence to support the decision, and of the fundamental fairness of the proceeding. The fact that an agency adjudication was subjected to judicial review and was upheld is a factor that supports giving it preclusive effect. *Id.* § 83 comment c.

In *Elliott,* the Court was presented with an unreviewed administrative factfinding. 106

S.Ct. at 323. Yancy's termination was reviewed both administratively and judicially. Although the opportunity for judicial review is not dispositive as to the preclusive effect to be given an administrative factfinding, *see Smith v. Updegraff,* 744 F.2d 1354, 1362–63 (8th Cir.1984), we think that it is an additional factor that supports according Yancy's termination hearing preclusive effect.

4. Our decision in *Smith v. Updegraff,* 744 F.2d 1354, is not to the contrary. In *Smith,* we declined to give issue preclusive effect to a decision of the Iowa Civil Service Commission, again interpreting Iowa law in a section 1983 action. Our decision rested not on the fact that the prior proceeding was before an administrative tribunal, but on the fact that the plaintiff simply did not raise or litigate the facts underlying his section 1983 claim before the commission. *Id.* at 1362–63. Yancy, however, did raise the factual issue of racial animus, and the school board resolved it against him.

231. Moreover, the school board in its findings of fact explicitly referred to this testimony. *Id.* at 67–68. It then stated, "The Board finds, based on credible and probative evidence, that the proposed termination is not based on race." *Id.* at 68. Thus, *Smith* is factually distinguishable from this case. And, Yancy's protestations to the contrary notwithstanding, he "raised and litigated his constitutional claims" before the school board and was not foreclosed from doing so by the inadequacies that he perceived in the investigation and discovery available to him prior to the hearing. He had a strong incentive to litigate the issue of racial discrimination; his job was at risk. We agree with the district court's conclusion that Yancy had a full and fair opportunity to litigate this issue. *Cf. Anthan,* 672 F.2d at 710 (collateral estoppel appropriate where factual issue was raised in prior proceeding and party against which it is now used had "strong reason" to litigate the issue); *United States v. Karlen,* 645 F.2d 635, 640 (8th Cir.1981) ("strong incentive" to litigate issue militates in favor of application of collateral estoppel).

■ Yancy next argues that the issues determined by the school board are not identical to the issues he raised before the district court, and that the board's determination that Yancy's discharge was not racially motivated was not necessary or essential to its decision to remove him. Yancy contends that although the school board did reach the issue of racial discrimination, it was merely collateral to the proceedings. He further argues, without citation of authority, that the board could have terminated him regardless of its determination of the race issue, if it also determined that his conduct as a teacher was improper. The district court found the determination of the race issue to be material and relevant to the school board hearing and necessary and essential to the resulting discharge of

Yancy. It further found the issues raised in both proceedings to be identical. We agree.

As we have already observed, Yancy and his attorney called several witnesses at the school board hearing who testified that his termination was racially motivated and that there was a racially prompted parental conspiracy against Yancy. This factual issue was explicitly resolved against him. A close reading of Yancy's federal complaint against McDevitt and the parents who testified against him reveals that each claim— thirteenth amendment, section 1981, and section 1983—is grounded on the factual allegation that his discharge was prompted not by Yancy's inadequacies as a teacher, but by the "racial animus" of the defendants. Designated Record at 7, 9–10. Thus, the district court correctly found the factual issue of "racial animus" raised in Yancy's complaint was identical to the issues of racial motivation resolved against him by the school board.

As we understand Yancy's argument on the related issues of the relevancy and necessity of the school board's determination that his discharge was not racially motivated, he contends that the board could have removed him if it found that his behavior was improper regardless of whether his removal was prompted by racial discrimination. This argument is frivolous. Yancy's federal complaint theorizes that he was in fact a competent teacher, and that the testimony against him was racially motivated. Designated Record at 1–11. Several of Yancy's witnesses testified before the school board that the charges against Yancy were prompted by racism. The school board could not logically have found that the charges were true unless it also found that they were not racially motivated fabrications.[5] The district court correctly found that this issue was relevant, necessary, and essential to Yancy's discharge.

---

5. Additionally, an Iowa public school teaching contract may only be terminated for "just cause." Iowa Code Ann. § 279.15(2) (West Supp.1986); *Munger v. Jesup Community School Dist.,* 325 N.W.2d 377 (Iowa 1982). The board's determination that Yancy's discharge was not racially motivated is both relevant and necessary to its decision to remove him because racial animus could hardly qualify as "just cause" for his removal.

Thus, the third and fourth elements of the *Hunter* test, 300 N.W.2d at 123, are satisfied.[6]

Yancy had his day in court. He raised and litigated the issue of racial animus before the Davenport School Board and he lost. He raised the issue again on administrative and judicial review and he lost. The district court correctly declined to give him a fourth forum in which to make the same complaint. *Elliott,* 106 S.Ct. at 3227; *Hunter,* 300 N.W.2d at 123. Because we dispose of this appeal on the grounds of issue preclusion, we need not consider Yancy's argument concerning the proper measure of damages or the contention that the statute of limitations bars all of Yancy's claims.

We affirm the summary judgment of the district court.