Charles H. TRUELSEN, Trustee, Appellee,

v.

**EUROPEAN HEALTH SPA OF NEBRASKA, INC., a Colorado Corporation, and European Health Spas, Inc., a Utah Corporation, Appellants.**

No. 76–2119.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1977.

Decided Sept. 8, 1977.

C. Keith Rooker and Clayton J. Parr, Salt Lake City, Utah, and Susman, Stern, Heifetz, Lurie & Sheehan, St. Louis, Mo., for appellants.

Harry H. Foulks, Omaha, Neb., for appellee.

Before GIBSON, Chief Judge, HEANEY, Circuit Judge, and DEVITT, District Judge.*

PER CURIAM.

This is a diversity case for breach of contract. Defendants claimed the contract was void for lack of consideration, mutual mistake of fact and, in any event, denied any breach. The jury found against defendants on special interrogatories, and the District Court[1] granted judgment for the plaintiff. Defendants appealed.

Prior to June 1968, Interstate Investment, Inc. (Interstate) had leased property in Omaha, Nebraska, and had begun remodeling to open a health spa. Robert L. Rice, Ken Melbry and Les Workman were also

---

* The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

interested in opening a spa in Omaha. Negotiations were held resulting in an agreement signed in June 1968 under which Interstate assigned its lease and all interest in the partially completed spa to defendant European Health Spa of Nebraska, Inc., (EHS). Interstate received 20% of the stock of EHS; the remaining 80% went to Rice, Melbry, Workman and their investors.[2]

The present litigation arose from an agreement entered into on March 20, 1970, that superseded the 1968 agreement. Under the 1970 agreement the 20%–80% stock proportion was restated even though reorganization had rendered it obsolete. In addition, the agreement provided that, beginning with September 1969, 8% of the after-tax gross income of EHS would be paid to Rice, Melbry and Workman and 2% of after-tax gross income would be paid to plaintiff Charles H. Truelsen as trustee.

Under the 1970 agreement, as found by the trial court, the amounts paid into trust were to be applied toward reduction of all construction debts incurred by Interstate relating to the health spa. The trust was to continue until all such debts[3] were paid. During that time the payments by EHS were to comprise the entire profit or income share of Interstate. EHS made the required payments through March 1972, totaling $14,269.21. Defendants contend that only the unpaid construction debts of Interstate were to be paid by the trustee and further that some of these debts are now barred by the statute of limitations.

Truelsen, as trustee, filed this suit for an accounting on January 31, 1975. After a jury rejected the defenses of lack of consideration and mutual mistake of fact, the District Court sustained plaintiff's motion for summary judgment on the verdict. The trial court found that the obligation of EHS under the 1970 agreement to pay into the corpus of this trust was unrelated to the running of the statute of limitations or any other defense of Interstate to the construction debt. The Court held such defenses have no bearing on plaintiff because his relationship is one of trustee to beneficiary rather than debtor to creditor.

▮ Upon a review of the record and of the briefs of the parties, we are convinced that the trial court's findings of fact are not clearly erroneous and that it applied correct principles of law to the factual issues presented. The 1970 agreement was drafted by an attorney for EHS. In Nebraska, as elsewhere, a contract is construed most strongly against the draftsman. *Timmerman Bros., Inc. v. Quigley*, 198 Neb. 129, 251 N.W.2d 877 (1977); *Omaha Public Power Dist. V. Natkin & Co.*, 193 Neb. 518, 227 N.W.2d 864 (1975). The trial court's construction of the contract is certainly a permissible one and in fact appears to be the most rational construction of the ambiguous contract drafted by defendant EHS. If defendants intended for the trust to pay only outstanding unpaid claims, the contract could have unequivocally so stated, and defendants must bear the burden of any ambiguity arising from this contract.

The judgment of the District Court is affirmed.

---

2. On June 27, 1968, all EHS stock was exchanged for stock in Kennebec Consolidated Mining Company as part of a reorganization. Subsequent reorganizations resulted in defendant European Health Spas, Inc. owning all stock in EHS.

3. Paragraph 5 of the 1970 agreement acknowledged that Interstate had expended for construction a total of $75,563.25. It further stated that Interstate's "share of the profits derived from the operation of [EHS], as hereinabove set forth, shall be used by [Interstate] as payment for said construction expenses."