VILLAGE SUPPLY CO., INC., Appellee,

v.

IOWA FUND, INC., Appellant.

No. 66590.

Supreme Court of Iowa.

Nov. 25, 1981.

Rehearing Denied Dec. 18, 1981.

James L. Bennett, Des Moines, for appellant.

George A. Wilson, III of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and SCHULTZ, JJ.

McCORMICK, Justice.

This appeal involves questions of issue preclusion and contract interpretation. The dispute concerns rates under a contract allowing plaintiff Village Supply Co. to be served by defendant Iowa Fund, Inc.'s private sewage treatment system. In response to Village Supply's petition for declaratory judgment, the trial court held that Village Supply was not precluded from litigating the issue by a prior adverse decision in a small claims suit. On the merits, the court ruled that the agreement limited Iowa Fund to a sewer charge equal to fifty percent of the rate paid by Village Supply to the Des Moines Waterworks for water. We agree with the trial court on the issue preclusion question but disagree with its declaratory judgment. Therefore we reverse.

Iowa Fund developed an industrial park in Polk County. It constructed a private sewage system to serve the subdivision in 1962. The cost of that system was reflected in the price charged for lots. By 1968, health authorities were insisting that the system be upgraded. Improvements to the system were made in 1969. By 1976, state authorities were again demanding that the system be upgraded, this time at a cost of approximately $100,000. Ultimately Iowa Fund expected the system would be integrated into the Des Moines metropolitan system.

Village Supply purchased two lots in the industrial park from a third party in 1973. A building was constructed on the lots by the third party. In August 1973, Village Supply wished to connect its property to the water and sewer lines in the development. Water was supplied by the Des Moines Waterworks. Defendant's president sent a letter to Village Supply setting out the terms under which the sewer connection was authorized:

It is . . . understood that you will not discharge anything other than sanitary or domestic wastes into the sewage lines and will agree to be governed by the regulations of the sewage treatment system of Iowa Fund, Inc. and pay your proportionate costs for sewage maintenance and treatment (said charges presently in an amount approximately 50% of the water rate paid to the Des Moines Waterworks for water).

Village Supply's president signed an acknowledgment agreeing to these terms. The parties had no collateral discussions.

For the period December 1, 1973, through November 30, 1974, Iowa Fund billed Village Supply for $150 in sewer charges. When Village Supply refused to pay the bill, Iowa Fund brought a small claims action. At trial, Village Supply contended the charge was excessive and violated the agreement. Iowa Fund insisted the charge was consistent with the agreement. A district associate judge entered judgment for Iowa Fund. Village Supply did not appeal and ultimately paid the judgment.

Subsequently, Iowa Fund sent Village Supply a sewage bill of $655 for the period December 1, 1975, through November 30, 1976. This billing also resulted in a small claims action. In this case, however, a magistrate ruled for Village Supply, fixing Iowa Fund's recovery at $26.64, an amount equal to one half of Village Supply's water bill for the period involved. Iowa Fund appealed from the small claims judgment.

Village Supply then brought this declaratory judgment action seeking to have the agreement interpreted and to limit the sewage charges to one half the amount of its water bill. It requested an injunction against charges in excess of that amount. The declaratory judgment action and small claims appeal were consolidated for trial. The court held the contract interpretation issue was not precluded by the adjudication in the first small claims suit. Declaratory judgment was entered adopting Village Supply's contention regarding the agreement, and the second small claims judgment was affirmed. The injunction was denied. Iowa Fund appealed from only the declaratory judgment. In this appeal, it

challenges the trial court's ruling on issue preclusion and on the merits. Village Supply separately contends Iowa Fund is now precluded by the final district court adjudication in the second small claims case.

I. *Issue preclusion.* Whether an issue adjudicated in a small claims judgment should have preclusive effect in a case within the regular jurisdiction of the district court is a question of first impression in this state. Small claims cases are governed by special statutes and rules. § 631.2, The Code. Among them is the requirement that the trial "be simple and informal, . . . without regard to technicalities of procedure." § 631.11(1). The statutes prescribe "a simple, swift, and inexpensive procedure for hearing and determining civil claims for money not exceeding $1000 and some forcible entry cases." *Wilson v. Iowa District Court,* 297 N.W.2d 223, 224–25 (Iowa 1980). Although small claims are tried in the district court, they are docketed, tried and appealed under special procedures which are intended to avoid the rigidity and formality of regular trials. *Id.* The parties do not have a right to jury trial. § 631.11(1); *Iowa National Mutual Insurance Co. v. Mitchell,* 305 N.W.2d 724 (Iowa 1981).

■ Issue preclusion bars relitigation of an issue which the parties, or those sufficiently identified with them, have previously litigated. Prerequisites for use of the offensive or defensive use of the doctrine are delineated in *Hunter v. City of Des Moines,* 300 N.W.2d 121 (Iowa 1981). We have previously noted exceptions to the general rule of issue preclusion which are listed in Restatement (Second) of Judgments section 68.1 (Tent.Draft No. 4, 1977). *Id.* at 124–25 n. 4. The exception in clause (c) is relevant here:

> A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures in the two courts or by factors relating to the allocation of jurisdiction between them
>
> . . . .

In material part, the Restatement Comment to clause (c) states that a compelling reason for denying issue preclusion exists when "the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim." We believe that this statement describes the situation in the adjudication of small claims in Iowa. Giving preclusive effect to small claims adjudications in subsequent regular district court trials would be inconsistent with maintaining the simplicity and informality of small claims procedures. *See Sanderson v. Niemann,* 17 Cal.2d 563, 110 P.2d 1025 (1941); *see also Gilberg v. Barbieri,* 53 N.Y.2d 285, 423 N.E.2d 807, 441 N.Y.S.2d 49 (1981).

■ We adopt the exception to the rule of issue preclusion in clause (c) of the Restatement. Applying the exception here, we hold that the trial court was right in ruling that the first small claims adjudication did not preclude Village Supply from relitigating the contract interpretation issue in the declaratory judgment action.

■ Similarly, we reject Village Supply's separate contention that Iowa Fund is precluded from litigating the issue in this appeal by the district court ruling affirming the second small claims judgment. Village Supply contends the situation is different because it relies on a judgment by a district judge on appeal. The problem with the contention is that an appeal in a small claims action is ordinarily decided on the record made in the original hearing. *See* § 631.13(4). The case is not retried under regular district court procedures. Affirmance of the small claims judgment did not change its character. The exception in clause (c) of Restatement section 68.1 is applicable. Therefore, even though review of the affirmance was not sought, we hold that the adjudication does not preclude litigation of the contract interpretation issue in this appeal.

■ II. *The merits of the case.* Principles governing review of interpretation and construction of contracts are summarized in *Connie's Construction Co., Inc. v.*

*Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975). Extensive evidence was received as an aid to interpretation in the present case. Although findings of fact are thus involved, this case was brought and tried in equity. Therefore we find the facts de novo. In doing so, we resolve doubts concerning the meaning of the agreement against Iowa Fund as its drafter. *See Rector v. Alcorn*, 241 N.W.2d 196, 202 (Iowa 1976).

Applying those principles here, we disagree with the trial court's interpretation and construction of the agreement. The agreement makes Village Supply liable for its "proportionate costs for sewage maintenance and treatment." Parenthetically it notes that the charges were "presently in an amount approximately 50% of the water rate paid to the Des Moines Waterworks for water." It does not purport to fix future charges at fifty percent of the water rate. Nor did Village Supply's president believe it did so. He testified as follows:

> Q. What does that mean then "presently"? A. Well, that would have reference to the water bill in 1973 and up to that point.
>
> Q. So presently to that point. A. . . . Yes.
>
> Q. So 1975 or 1976 in your mind, am I correct, would not mean presently? A. No, it would not be present.

He also testified he understood the term "maintenance" would include whatever expenses were necessary to keep the system in operating condition. He believed this would include repair but not improvements.

■ The practical construction placed on an agreement by the parties will be given effect. *Lovlie v. Plumb*, 250 N.W.2d 56, 59 (Iowa 1977). The testimony of Village Supply's president accords with the practical construction put on the agreement by Iowa Fund when it was entered. The charges being made at that time did not include recoupment for the original 1962 investment or 1969 improvements. Iowa Fund decided subsequently to attempt to recover its original investment through the sewer charges. This appears to have been motivated by a realization that substantial additional improvements were necessary. Iowa Fund's president testified he changed the basis for the charges because he believed the contract gave Iowa Fund the right to make charges as if it were a public utility. This change of position was contrary to Village Supply's understanding and Iowa Fund's earlier practical construction of the agreement.

■ Giving effect to that understanding and construction, we find that the agreement obligates Village Supply to pay its proportionate share for sewage maintenance and treatment but not for Iowa Fund's original investment or improvements in the system. We agree with Iowa Fund, however, that the contract does not limit sewer charges to fifty percent of water charges.

As used in the agreement, the term "maintenance" embraces the usual meaning of the word "maintain":

> acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition; bear the expense of; carry on; commence; continue; furnish means for subsistence or existence of; hold; hold or keep in an existing state or condition; hold or preserve in any particular state or condition; keep from change; keep from falling, declining, or ceasing; keep in existence or continuance; keep in force; keep in good order; keep in proper condition; keep in repair; keep up; preserve; preserve from lapse, decline, failure, or cessation; provide for, rebuild; repair; replace; supply with means of support; supply with what is needed; support; sustain; uphold . . . not to lose or surrender; not to suffer or fail or decline.

*Black's Law Dictionary* 859 (5th ed. 1979). Maintenance refers to "expenditures undertaken to preserve an asset's service potential for its original intended life . . . ." *Id.* at 860. In contrast, an improvement is "[a] valuable addition made to property . . . or an amelioration in its condition, amounting to more than mere repairs or replacement . . . intended to enhance its value, beauty

or utility or to adapt it for new or further purposes." *Id.* at 862.

Covered expenses would include amounts for repair, real estate taxes, testing, cutting weeds, and other costs necessarily incurred to keep the system operating to perform its intended function. Expenses of original construction and the 1969 improvements are not included. Nor are meeting hall expenses or legal expenses incurred in defending actions by the Department of Environmental Quality and in collecting delinquent accounts. Whether a future capital outlay can be recovered as an expense of maintenance and treatment will depend on its purpose. If it is necessary to keep the system functioning, it is covered. If it is to adapt the system to new or additional purposes, it is not.

A useful standard is provided in *State ex rel. Walter v. Vogel*, 108 Ohio App. 294, 297–298, 161 N.E.2d 449, 452 (1958). In that case the court characterized maintenance of light fixtures as meaning "to keep in a state of efficiency for the furnishing and rendition of those services which are required for the practical and efficient use of the fixtures." By analogy, Village Supply is obliged to pay its proportionate share of expenses necessary for the practical and efficient use of the sewage system.

In determining Village Supply's proportionate share for maintenance and treatment, we believe the contract establishes proportionate water usage as a standard. That is the standard which Village Supply reasonably believed was contemplated by the contract. Thus, once the total amounts attributable to maintenance and treatment are calculated, Iowa Fund may charge Village Supply for only such proportion of the total as its water charges bear to the water charges of all users of the system.

In so holding, we do not decide what amounts Iowa Fund may charge other users. We only decide its contractual rights against Village Supply. We reverse the declaratory judgment of the trial court and enter declaratory judgment in accordance with this opinion.

REVERSED.