**LEVIEN LEASING CO.,
Plaintiff-Appellant,**

v.

**DICKEY COMPANY,
Defendant-Appellee.**

No. 84–1850.

Court of Appeals of Iowa.

Nov. 26, 1985.

William S. Gibb and James L. Kramer, of Johnson, Erb, Latham, Gibb & Carlson, P.C., Fort Dodge, for plaintiff-appellant.

Ned A. Stockdale, Estherville, for defendant-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Plaintiff appeals from judgment for defendant in a replevin action, asserting: (1) that the trial court improperly considered parol evidence; (2) that the evidence was insufficient to support a finding that an offer was made granting defendant a purchase option upon expiration of the term of a lease; and (3) that evidence concerning any purchase option agreement was barred by the statute of frauds.

In March of 1978, Steve Powers, who was an employee of Levien Chevrolet, a separately incorporated truck dealership, entered into negotiations with a representative of Dickey concerning the purchase of certain trucks. When it became apparent that Dickey was interested in leasing, Powers directed Dickey to Levien Leasing. Powers sent the original sales proposal which was typed on Levien Chevrolet stationery to Levien Leasing. A copy of this sales proposal was made and it is unclear whether Powers retained the copy in his files or whether he forwarded the copy, along with the original, to Levien Leasing. In any event, the sales proposal contained truck specifications and a purchase price for the truck at issue. Powers had no authority to negotiate leases unless expressly authorized to do so. He would

refer leasing inquiries to Levien Leasing and denied that he had received such authorization in this instance.

The business was structured such that customers often had the option of buying a vehicle from Levien Chevrolet or leasing it, with or without a purchase option, from Levien Leasing. Levien Leasing would purchase the vehicle from Levien Chevrolet if the customer chose the leasing option. The cooperative relationship ended after Levien Leasing was sold to its new owners.

On May 15, 1978, defendant Dickey leased a truck from plaintiff Levien Leasing for four years under a written agreement stating that it was the complete agreement of the parties. No option to purchase at the expiration of the lease term was provided in this standard motor vehicle lease.

The original sales proposal which was subsequently sent to Dickey by Levien Leasing contained a typewritten provision towards the bottom of the page which stated:

Lease price:
48 months at $915.55 per month
49th month purchase price at $100.00
This original document was introduced into evidence by plaintiff. A copy of the sales proposal which was submitted by the plaintiffs, however, did not contain the purchase option provision and no other company records or Levien Chevrolet records indicated that a purchase option had been offered. Expert testimony indicated that the provision typed on Dickey's copy was typed on the same typewriter used for other correspondence of Levien Leasing. It was also shown that Levien Leasing would often enter into separate purchase option agreements even though the lease agreement contained an integration clause which purported to be the exclusive agreement of the parties. Both the sales employee of

Levien Chevrolet who drafted the sales proposal, Steve Power, and the manager of Levien Leasing during 1978, Lloyd Mum, denied having any knowledge of discussing orally or authorizing a written purchase option agreement.

Levien Leasing commenced a replevin action following rejection of a tender by Dickey purporting to exercise an option to buy the truck after the 48-month lease period ended. Relying in part on parol evidence, the trial court entered judgment for defendant, finding the evidence sufficient to establish the existence of a purchase option agreement separate from the lease agreement. The statute of frauds was found to be inapplicable due to both plaintiff's failure to object to evidence of the purchase option agreement and partial performance under the agreement by defendant.

This case presents an interesting factual issue because neither party clearly demonstrated how the terms:

Lease price:
48 months at $915.55 per month
49th month purchase price at $100.00
appeared on Dickey's original sales proposal, but not on the copy of the sales proposal retained by Levien Leasing.

While preserving the resolution of this factual issue until later, the first legal issue we address is whether the trial court erred in admitting parol evidence when the lease agreement between Levien Leasing and Dickey contained an integration clause.

## I.

■ A contract with an integration clause typically represents the complete agreement of the parties and any extrinsic evidence which varies, adds, or subtracts from its terms is barred by the parol evidence rule.[1] *See Kroblin v. RDR Motels*, 347 N.W.2d 430, 433 (Iowa 1984).

1. Article 2 of the Iowa Uniform Commercial Code only applies to the sales of goods. Iowa Code § 554.2106(1) (1985). The trial court correctly held that a truck is a good under the Iowa UCC § 554.2105(1). However, the court did not address the more difficult issue of whether a lease with a purchase option is a sale under the Iowa UCC. By definition, a lease without a purchase option does not fall within the rules of UCC Article 2. It could be contended that because the lease contained a purchase option this arrangement constituted a "sale" even though under the lease terms title remained in Levien Leasing throughout the 48-month period. In

The rule does not come into play until by interpretation the meaning of the writing is ascertained, and, as an aid to interpretation, extrinsic evidence is admissible which sheds light on the situation of the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain.

*I.G.L. Racquet Club v. Midstates Builders Inc.,* 323 N.W.2d 214, 216 (Iowa 1982); *Egan v. Egan,* 212 N.W.2d 461, 464–65 (Iowa 1973); *Hamilton v. Wosepka,* 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967); *Central Transport v. Fruehauf Corp.,* 139 Mich.App. 536, 362 N.W.2d 823, 827 (1984) ("Prerequisite to application of the parol evidence rule is a finding that the parties intended the writing to be a complete expression of their agreement. Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question.")

The lease at issue contained an integration clause. Levien Leasing contends this represents the complete agreement of the parties; Dickey claims otherwise. Iowa law provides:

> An integrated agreement is one in which the parties adopt a writing or writings as the final and complete expression of the

agreement. *Kitchen v. Stockman National Life Insurance Co.,* 192 N.W.2d 796, 800 (Iowa 1971). Some courts have held an integration clause like the one before us reinforces application of the parol evidence rule to prevent proof of an alleged prior contract. (Authorities). Other cases indicate an integration clause should not be controlling on the issue of whether the written contract is the whole integrated agreement, so as to exclude parol evidence on the issue. (Authorities). We hold in these circumstances where the handcrafted contract contains an integration clause, where the parties were sophisticated business persons represented by counsel and of equal bargaining strength, and where terms of the alleged oral agreement reasonably would be expected to be included in the exchange agreement, trial court did not err in sustaining a parol evidence rule objection, thus excluding evidence to vary its terms.

*Montgomery Properties Corp. v. Economy Forms Corp.,* 305 N.W.2d 470, 476 (Iowa 1981). The court in *Montgomery Properties* applied the parol evidence rule to exclude extrinsic evidence; however, this

---

dealing with this issue, the Iowa Supreme Court has commented that:

> [not] every commercial transaction which is characterized or labeled as a lease agreement can never come within UCC provisions. *See, e.g., Transcontinental Refrigeration Co. v. Figgins,* [179] Mont. [12], 585 P.2d 1301, 1305 (1978); *Industra-lease v. Enterprises, Inc.,* 58 App.Div.2d 482, 487, 396 N.Y.S.2d 427, 430 (1977). *See also Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance,* 49 Ill.App.3d 213, 218–19, 8 Ill.Dec. 823, 827, 365 N.E.2d 1285, 1289 (1977) (certain provisions of article 2 may be applied by analogy to equipment leases). Whether a true lease agreement exists, and not a mere label as such, may raise questions of law or fact. But these potential questions are not before us under the pleadings in this case, and we need not, and do not, consider them further today.

*See also* 67 Am.Jur.2d *Sales* § 37 (1985) ("A transaction whereby goods are leased with the option given the lessee to purchase the leased goods is generally regarded as a lease or bailment, and not a sale, even where it is that the amounts paid as rental shall be applied in whole

or in part to the purchase price. In some instances, a contract in the guise of a lease has been held to be a sale, such as where the lessee has the right under the agreement to obtain title to the goods at the end of the lease term at little or no additional cost, or sales and lease contracts covering the same goods and containing the same terms were executed.") After considering the Iowa Supreme Court's cautionary language, we nonetheless feel it is necessary to determine if the common law or UCC parol evidence rule and statute of frauds apply in this case. We are using parol evidence to determine if a purchase option existed which could bring the transaction within the Iowa UCC. It would be conceptually difficult, however, to apply the UCC's parol evidence rule in determining whether a purchase option existed because finding a purchase option existed is a prerequisite, under the facts of this case, to applying any UCC authority. We subsequently hold in this opinion that a purchase option existed. Thus, we choose to apply the Iowa UCC only to the statute of frauds, § 554.2201, issue because this lease contains a purchase option for a relatively small amount such that this transaction is analogous to a sale.

situation is readily distinguishable. *Montgomery Properties* had a handcrafted contract, whereas this case offers a boilerplate motor vehicle lease. Moreover, *Montgomery Properties* had an oral agreement which could reasonably be expected to be included in the contract; whereas the terms contained in the sales proposal document could not be expected to be in the lease because of the company's and industry's trade practice of placing purchase options in a separate document.

■ Dickey persuasively demonstrated that Levien Leasing routinely enters into leases with an integration clause and will nonetheless provide for a purchase option in a separate document. Such a course of dealing also was shown to be the custom and practice of the industry generally, apparently due in part to the tax implications. Thus, we find that even though an integration clause existed in the lease, the parol evidence rule would not bar extrinsic evidence of a purchase option in this case. We are not convinced that the parties intended the lease to be the complete expression of their agreement. We choose not to follow the authority cited by Levien Leasing, e.g.—*Central Transport,* and *Transamerican Leasing Co. v. Three Bears, Inc. Fruehauf Trans.,* 586 S.W.2d 472 (Tex. 1979), because the parties seeking to admit parol evidence in those cases relied on oral extrinsic evidence and the trial courts held the writings were consistent with the intent of the parties. In this case, Dickey introduced written extrinsic evidence which was consistent with company and industry practice and the trial court admitted such evidence.

## II.

The next issue we address is whether substantial evidence existed to support the trial court's finding that Levien Leasing offered a purchase option to Dickey upon expiration of the lease. This is a very complicated issue due to the factual setting of this case.

■ Plaintiff Levien Leasing pled the lease was the only agreement between the parties.[2] Defendant Dickey pled as an affirmative defense that a purchase option existed. Therefore, Dickey, not Levien Leasing, bore the burden of proof to establish its affirmative defense. Dickey had to prove by a preponderance of the evidence that Levien Leasing made an offer to Dickey to have a 49th-month purchase option. *See Martin v. Jaekel,* 188 N.W.2d 331, 333 (Iowa 1971); *Sherwood v. Nissen,* 179 N.W.2d 336, 338–39 (Iowa 1970); *Mayrath Company v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 305 (1966). Dickey introduced its document which contained the purchase option language, but Levien Leasing submitted testimony by Powers and Mum who adamantly contended no oral or written purchase option was ever offered.

As best gleaned from the record, the following events transpired: Steve Powers of Levien Chevrolet discussed purchase prices of trucks with a Dickey representative. After discovering that Dickey was interested in leasing trucks, Powers typed a letter on Levien Chevrolet stationery and attached various purchase prices. Powers supposedly sent the original document to Levien Leasing and made a copy of this document. The trial court inferred that Levien Leasing then apparently had an employee who typed the disputed term on the original sales proposal and sent this document to Dickey. Levien Leasing evidently did not make a copy of the newly-typed terms. Levien Leasing and Dickey entered into a boilerplate lease which provided for a 48-month rental period requiring $915.55 monthly payments. A purchase option was not mentioned in the lease.

■ At this point we are still left with speculation about *who* typed the controverted terms on Dickey's sales proposal. Levien Leasing showed that their office had been broken into several times so as to

<hr>

**2.** Although Levien Leasing's complaint discussed defendant's likely allegations, plaintiff

did not have the burden of proof.

lead to an inference that an agent of Dickey could have broken into Leasing's office and typed the terms. While this explanation is possible, this is too difficult for us, and apparently the trial judge, to believe. On the other hand, Dickey submits that an employee, possibly a secretary of Levien Leasing, typed the disputed terms and forwarded the original to Dickey. We find this to be a more satisfying explanation. We think Levien Leasing was better equipped to have its nonmanagerial employees testify on the issue of who could have typed the terms. Levien Leasing failed to offer any such evidence. We find substantial evidence to support the trial court's inference that because the terms were typed on a Levien Leasing typewriter, absent any testimony to the contrary, that an employee of Levien Leasing typed the disputed terms. We are unwilling, based on the truly unique facts in this case, to find error in the trial court's finding.

After finding that the terms were typed by an employee of Levien Leasing, we must decide if this constituted an offer and, if so, did Dickey accept it. Levien Leasing maintains that the document received by Dickey was a sales proposal, not an offer, which sought to *solicit* an offer from Dickey. Secondly, Levien Leasing maintains that even if such a document was an offer, it was an offer from Levien Chevrolet which cannot be binding upon Levien Leasing, a separate corporation.

■ It is generally accepted that "an offer is the manifestation of a willingness to enter into a bargain, *so made as to justify another person* in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts, § 24 (1981) (emphasis added). The focus of the inquiry is what Dickey, not Levien Leasing, thought. We find Dickey would have been justified in believing an offer for a 48-month lease with a purchase option was made because the original document was sent to Dickey with these terms. Dickey was further justified in believing that Levien Leasing, not Levien Chevrolet, made the offer. Al-

though Dickey's initial inquiry and discussion was with Levien Chevrolet, Levien Chevrolet's agent informed Dickey that he could only sell trucks. If a lease was desired, Dickey would have to negotiate with Levien Leasing. Apparently Levien Chevrolet's agent sent his sales proposal to Levien Leasing, who in turn added the disputed terms. Dickey received the document from Levien Leasing and was justified in thinking an offer had been made by Levien Leasing. Dickey could have thought Levien Leasing approved of the negotiations conducted by Powers of Levien Chevrolet and supplied their own additional terms as an offer. While Powers was not authorized to act on behalf of Levien Leasing, we find sufficient evidence to support a finding that Dickey was justified in believing that Levien Leasing ratified these acts. *See Abodeely v. Cavras*, 221 N.W.2d 494 (Iowa 1974).

We must also determine whether Dickey accepted this offer. Dickey claims to have proven its acceptance by partially performing, i.e. tendering the 48 monthly payments of $915.55. While this seems persuasive at first blush, Levien Leasing notes that the lease, notwithstanding the disputed terms in the sales proposal, also provided for 48 monthly payments of $915.55. Thus, Dickey could have made the payments under the lease or the purchase option—it never indicated which it used.

■ The trial court did not decide whether the purchase option provision was a separate option contract or a contract clause contained within the lease which was binding on Dickey. Instead, the trial court found that the evidence showed Dickey fully performed under both the lease and purchase option agreements. According to the trial court, if this agreement constituted a separate option contract, Dickey exercised it by paying the 48 monthly installments and tendering $100. If this agreement constituted a clause contained within the lease contract, Dickey fully performed by the same acts. According to the trial court, in either case, Levien Leasing was obligated to transfer title to the truck. Dickey

claims it accepted the offer by April 25, 1978, because Levien Leasing would not have purchased the truck from Levien Chevrolet unless a lease transaction was pending. While expressing no view as to whether the disputed term was a separate contract apart from the lease agreement[3], the better view is that the agreement was an option clause contained within an existing contract. The lease lasted 48 months and required monthly payments of $915.55. The purchase option contained those same provisions and also provided for a 49-month purchase option if $100 was tendered. Thus, we find sufficient evidence in the record to support the finding that Dickey did manifest its acceptance of the purchase option by making the 48 monthly payments pursuant to the lease.

### III.

The remaining issue presented by Levien Leasing is that the agreement which Dickey accepted is barred by the Iowa Statute of Frauds in Code § 554.2201 because it could not be performed within one year. The statute of frauds provides that agreements which cannot be performed within one year must be evidenced by a writing signed by the party against whom enforcement is sought. Dickey admits such a signed writing did not exist, but that the conditions of the purchase option were substantially performed or, in the alternative, that Levien Leasing waived the statute of frauds issue because it introduced the document containing the purchase option.

█ We need only address the waiver portion of the statute of frauds argument. Levien Leasing offered the document which contained the disputed terms into evidence. Levien Leasing maintains it did not waive the statute of frauds objection because the document with the disputed terms was a sales proposal instead of an offer. According to Levien Leasing, a

sales proposal cannot be an offer. We disagree. The disputed document, as previously mentioned, was the basis for finding that Levien Leasing offered a purchase option to Dickey. Thus, when Levien Leasing offered this document into evidence it waived any statute of frauds claims. *See Bahnsen v. Rabe*, 276 N.W.2d 413, 415 (Iowa 1979); *accord* § 554.2201(3)(b). We do not address whether Dickey's purported substantial performance also negated a statute of frauds exception.

For the aforementioned reasons, we affirm the trial court's decision.

AFFIRMED.

---

3. If we had found the parol evidence rule precluded considering the sales proposal along with the lease, then we would have had to address whether Dickey's copy of the sales proposal, by itself, was an option contract. *See*

Restatement (Second) of Contracts, § 87 (1981). Because we allowed the disputed terms to be admitted, we also find such terms could be construed as a part of the lease agreement.