James DeJONG, Sr. and James DeJong, Jr., Plaintiffs,

v.

CITY OF SIOUX CENTER, Defendant.

No. C 95–4027–DEO.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 3, 1997.

Michael W. Ellwanger, Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, for Plaintiffs.

Michael R. Hellige, Leif D. Erickson, Shull, Cosgrove, Hellige, Lundberg, Sioux City, IA for Defendant.

## ORDER ON POST–TRIAL MOTIONS

ZOSS, United States Magistrate Judge.

### I.  PROCEDURAL BACKGROUND

This dispute revolves around the lease for a space in "The Centre," a new shopping center in Sioux Center, Iowa. James DeJong, Sr. and James DeJong, Jr. ("the DeJongs"), the lessees, brought this action against defendant City of Sioux Center, Iowa ("Sioux Center" or "the city"), the lessor, by filing a complaint in this court on April 5, 1995.  In their complaint, the DeJongs alleged four causes of action: negligent misrepresentation, fraudulent misrepresentation, promissory estoppel, and breach of contract.  Jurisdiction was alleged under 28 U.S.C. § 1332 (diversity of citizenship).  Sioux Center filed a counterclaim on December 29, 1995, seeking to recover unpaid rents allegedly due under the lease.  On March 30, 1997, the Honorable Mark W. Bennett granted summary judgment to Sioux Center on the negligent misrepresentation count.  On May 13, 1997, the parties consented to try the case before the undersigned United States Magistrate Judge.

This case was tried to a jury from June 9 to June 13, 1997.  At the conclusion of the evidence, the court submitted plaintiffs' three remaining theories of recovery to the jury.  The court also submitted defendant's counterclaim.  The jury found for Sioux Center on the fraudulent misrepresentation claim, but found for the DeJongs on their promissory estoppel and breach of contract claims.  The jury also found for the DeJongs on Sioux Center's counterclaim for rent.  The jury awarded the DeJongs $149,000.

On June 23, 1997, Sioux Center filed a motion for judgment as a matter of law under Rule 59 of the Federal Rules of Civil Procedure (Docket No. 101).  In the motion, Sioux Center asked the court to overturn the jury's verdicts on the promissory estoppel and breach of contract claims and to enter judgment in its favor, arguing that these claims cannot stand as a matter of law. Sioux Center alternatively asked for a new trial, arguing that one of the jury instructions erroneously stated the law (Instruction No. 31), that another of the instructions

should not have been given (Instruction No. 27), and that the court erred in an evidentiary ruling concerning videotape evidence. Also on June 23, 1997, Sioux Center filed a motion for judgment as a matter of law on its counterclaim (Docket No. 105). The motions were all resisted by the DeJongs.

The court heard oral argument on the motions on July 29, 1997. For the reasons set out in this order, the motion for judgment as a matter of law is granted in part and denied in part, the motion for new trial is denied, and the motion for judgment as a matter of law on the counterclaim is denied.

## II. PLAINTIFFS' THEORIES OF RECOVERY

### A. Promissory Estoppel

The jury returned a verdict in favor of the DeJongs on their promissory estoppel theory, Count III of their complaint, in which they alleged:

¶ 37. Plaintiffs reasonably relied upon the aforesaid representations[1] of Defendant, to the detriment of the Plaintiffs.

¶ 38. The equities require that the promises of the Defendant be enforced, and that the Defendant be held liable for all damage for breach of the aforesaid promises.

[1]. These representations were listed in paragraphs 12 and 15 of the complaint. In paragraph 12, plaintiffs alleged that the city made the following representations:
a. The hardware store and the Coop would not present a competitive problem for the Plaintiffs. It was on the wrong side of the tracks and that numerous trains came through downtown and blocked the roadway and people did not like to wait for the trains.
b. The Coop had tried on three or four occasions to open a hardware store and that they had all been unsuccessful.
c. There was no loyalty to the Coop.
d. The people in the community had a tremendous loyalty to downtown shopping. People in the community supported the construction of the mall and would make it work.
e. The Wal–Mart store and the S & S Hardware Store, which were also competitive, did not present competitive problems. They were too far out of the way.
f. The community would do everything possible to help the operation become successful.

¶ 39. Defendant breached the aforesaid promises . . . .

(Compl. ¶¶ 37–39.)

The city argues that the lease contains the complete agreement of the parties, and that any prior oral representations not written into the final lease are not part of the contract. Sioux Center also points out that the lease contained a clear and unambiguous integration clause,[2] and argues that the written, fully integrated contract precludes the use of promissory estoppel to add any non-written terms. The court agrees.

Promissory estoppel was defined by Judge Bennett earlier in this case in his Memorandum Opinion and Order Regarding Motion for Summary Judgment (Docket No. 73) filed March 20, 1997:

Under Iowa law, the elements of promissory estoppel are: (1) a clear and definite agreement; (2) proof that the party seeking to enforce the agreement reasonably relied upon it to the party's detriment; and (3) a finding that the equities support enforcement of the agreement. *In re Marriage of Harvey,* 523 N.W.2d 755, 756 (Iowa 1994) (citing *Merrifield v. Troutner,* 269 N.W.2d 136, 137 (Iowa 1978)); *Farmers State Bank v. United Cent. Bank of Des Moines,* 463 N.W.2d 69, 71 (Iowa 1990); *accord National Bank of Waterloo v. Moeller,* 434 N.W.2d 887, 889 (Iowa

In paragraph 15, plaintiffs alleged:
In addition, the aforesaid representatives of the City promised the Plaintiffs that the mall construction would be completed and there would be a grand opening by July 1, 1991; and that at that time the mall would be at least 60% filled with tenants.

[2]. The integration clause in the lease (Ex. 1) is found in Article 34, "Representations," which states:

TENANT acknowledges that LANDLORD and LANDLORD's agents have made no Representations or promises with respect to the Premises or the making or entry into this Lease, except as in this Lease expressly set forth, and that no claim or liability, or cause for termination, shall be asserted by TENANT against LANDLORD for, and LANDLORD shall not be liable by reason of, the breach of any Representations or promises not expressly stated in this Lease . . . .

1989) (finding insufficient evidence of promissory estoppel where bank asserted a production credit association promised it a superior lien on a piece of property); *City of Cedar Rapids v. McConnell–Stevely–Anderson Architects & Planners, P.C.,* 423 N.W.2d 17, 19 (Iowa 1988) (applying promissory estoppel against a party asserting the invalidity of an ordinance); *see also Simmons Poultry Farms, Inc. v. Dayton Rd. Dev. Co.,* 82 F.3d 217, 220 (8th Cir. 1996) (applying elements of promissory estoppel under Iowa law) (citing *Uhl v. City of Sioux City,* 490 N.W.2d 69, 73 (Iowa.Ct. App.1992)); *Uhl v. City of Sioux City,* 490 N.W.2d 69, 73 (Iowa.Ct.App.1992); *Chipokas v. Hugg,* 477 N.W.2d 688, 690 (Iowa. Ct.App.1991) (citing *National Bank of Waterloo,* 434 N.W.2d at 889); *Bradshaw v. Wakonda Club,* 476 N.W.2d 743, 748 (Iowa. Ct.App.1991); *In the Matter of Scheib Trust,* 457 N.W.2d 4, 9 (Iowa.Ct.App.1990). (Mem.Op. & Order Regarding Mot. for Summ.J. (Docket No. 73).) The effect of the doctrine of promissory estoppel is to imply a contract in law where none exists in fact. *Friedman v. BRW, Inc.,* 40 F.3d 293, 297 (8th Cir.1994) (citing *Grouse v. Group Health Plan,* 306 N.W.2d 114, 116 (Minn.1981)); *Tuomala v. Regent University,* 252 Va. 368, 477 S.E.2d 501, 506 (1996); *Dickens v. Quincy College Corp.,* 245 Ill.App.3d 1055, 185 Ill.Dec. 822, 827, 615 N.E.2d 381, 386 (1993).

■ The question presented in this case is whether promissory estoppel can be used to alter or add terms to a contract that already exists. While no Iowa decision has addressed this precise issue, a large body of law supports the proposition that a claim for promissory estoppel cannot be used to enforce an oral promise where the parties have executed a valid, fully integrated document subsequent to the alleged oral representations. *Tuomala,* 477 S.E.2d at 506 (holding that "the doctrine [of promissory estoppel] would not apply here because the parties made an enforceable contract"); *Frey v. Ramsey County Community Human Serv.,* 517 N.W.2d 591, 602 (Minn.App.1994) (holding that "[i]n this case, there was a contract, and the doctrine of promissory estoppel is inapplicable"); *Great Lakes Aircraft Co., Inc. v. City of Claremont,* 135 N.H. 270, 608 A.2d

840, 853 (1992) (stating that "in all instances, application of promissory estoppel is appropriate only in the absence of an express agreement"); *see NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 759 F.Supp. 1004, 1011 (S.D.N.Y.1991) (applying Illinois law); *International Bus. Mach. Corp. v. Medlantic Healthcare Group,* 708 F.Supp. 417, 424–25 (D.D.C.1989); *Durkee v. Goodyear Tire & Rubber Co.,* 676 F.Supp. 189, 192 (W.D.Wis. 1987); *Resource Tech. Corp. v. Fisher Scientific Co.,* 924 P.2d 972, 977 (Wyo.1996) (applying Pennsylvania law); *Prentice v. UDC Advisory Serv., Inc.,* 271 Ill.App.3d 505, 207 Ill.Dec. 690, 696, 648 N.E.2d 146, 152–53 (1995); *see also Rolscreen Co. v. Pella Products of St. Louis, Inc.,* 64 F.3d 1202, 1208 (8th Cir.1995) (applying Missouri law); *In re Gulf Oil/Cities Serv. Tender Offer Litg.,* 725 F.Supp. 712, 735 (S.D.N.Y.1989).

■ Iowa law establishes that parol evidence cannot be used to contradict or modify the terms of a fully integrated contract. *See Young v. Cedar County Work Activity Ctr., Inc.,* 418 N.W.2d 844, 848 (Iowa 1987); *Freese Leasing v. Union Trust & Sav. Bank,* 253 N.W.2d 921, 924 (Iowa 1977). When an agreement is fully integrated, the parol evidence rule prevents the introduction of any extrinsic evidence to contradict (or even supplement) the terms of the written agreement. *Whalen v. Connelly,* 545 N.W.2d 284, 290 (Iowa 1996). As the Iowa Court of Appeals stated in *Levien Leasing Co. v. Dickey Co.,* 380 N.W.2d 748 (Iowa App.1985):

> A contract with an integration clause typically represents the complete agreement of the parties and any extrinsic evidence which varies, adds, or subtracts from its terms is barred by the parol evidence rule. *See Kroblin v. RDR Motels,* 347 N.W.2d 430, 433 (Iowa 1984).

*Levien Leasing,* 380 N.W.2d at 750 (footnote omitted).

■ The court finds that promissory estoppel cannot be used in this case to enforce prior oral agreements between the parties that are not part of the lease because the parties executed a fully integrated written contract. Sioux Center's motion for judg-

ment as a matter of law on Count III is granted.

## B. Breach of Contract

The jury returned a verdict in favor of the DeJongs on their breach of contract theory, Count IV of their complaint, in which they alleged that Sioux Center

> contractually obligated itself to comply with certain representations and promises that were made as an inducement to cause Plaintiffs to quit their jobs and enter into a lease with the Defendant. . . .

(Compl.¶ 41.)

■ The city argues that the jury's verdict in favor of the DeJongs on this claim should be set aside because the city did not breach any of the terms of the lease. The DeJongs, on the other hand, argue that there is an ambiguity in the lease that should be resolved against the city, and that the city breached the terms of the lease as it is interpreted by them. This dispute revolves around the interpretation of the following language contained in the "Basic Lease Information"[3] section of the lease: "Opening Date: Approximately 1 September 1991." Sioux Center argues that this language refers to the opening date for the "Premises," i.e., the space for the DeJong's True Value Hardware store in the shopping center. The DeJongs argue that the language refers to the opening date for "The Centre," i.e., the entire shopping center.[4]

■ In order to resolve this issue, the court must answer the following four questions: (1) is this provision of the lease ambiguous; (2) if it is, should any ambiguity in the lease be resolved against the city; (3) if so, is the DeJongs' interpretation reasonable; and (4) did Sioux Center breach this provision of the lease. The first question is a question of law,[5] while the remaining questions are either fact questions or mixed questions of fact and law.

### 1. Is the lease ambiguous?

The city argues that the language in the lease stating "Opening Date: Approximately 1 September 1991" unambiguously refers to the opening date of the hardware store. As support for its position, Sioux Center points to other language in the lease. In the Basic Lease Information section of the lease (App. A), the "Premises" are defined as "Space # 304," the designation for the hardware store space. The "Rent Commencement Date" is stated in the lease to be "[a]pproximately 1 September 1991 or 60 days after Landlord turns building over to tenant for set up." The "Percentage Rental" and the "Common Area" rental were both to begin on the "Opening Date." The "Period of Completion for Tenant's Work" is stated in the lease to be "[a]pproximately 1 September 1991." From these references, Sioux Center argues that the "Opening Date" in the lease refers unambiguously to the opening date of the hardware store, not of "The Centre."

The DeJongs respond that on the same page where the "Opening Date" is stated to be "[a]pproximately 1 September 1991," the "Shopping Center" is identified as " 'The Centre'—Sioux Center, Iowa." The DeJongs

---

**3.** The three pages of the lease containing "Basic Lease Information" are attached to this Order as Appendix A.

**4.** There is also some suggestion that the DeJongs are claiming implied covenant to have the shopping center complete by September 1, 1991. While such covenants have been implied in similar situations, *Fashion Fabrics, Inc. v. Retail Investors Corp.,* 266 N.W.2d 22, 28 (Iowa 1978) (citing *Lilac Variety, Inc. v. Dallas Texas Co.,* 383 S.W.2d 193 (Tex.Civ.App.1964)), they cannot be implied in situations, such as here, where the contract is fully integrated. *Fashion Fabrics,* 266 N.W.2d at 28; *Fuller Market Basket, Inc. v. Gillingham & Jones, Inc.,* 14 Wash.App. 128, 539 P.2d 868, 872–873 (1975).

**5.** Under Iowa law, the court, not the jury, has the duty to construe contracts. *AMCO Ins. Co. v. Rossman,* 518 N.W.2d 333, 334 (Iowa 1994); *Jensen v. Jefferson County Mut. Ins. Co.,* 510 N.W.2d 870, 871 (Iowa 1994). The court should give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning. *Home Fed. Sav. & Loan Ass'n of Algona v. Campney,* 357 N.W.2d 613, 617 (Iowa 1984); *Fashion Fabrics, Inc. v. Retail Investors Corp.,* 266 N.W.2d 22, 26 (Iowa 1978). Although the parties may disagree on the meaning of a term, that does not establish that the term is ambiguous so as to cause an interpretation of the contract against the maker. *AMCO Ins.,* 518 N.W.2d at 334.

argue that there is nothing in the lease to clarify whether the "Opening Date" in the lease referred to the opening date of the shopping center or the opening date of the hardware store. They argue that the lease was not just for a cubicle of space, but was for space in "The Centre," a completed shopping center, which was to have common areas, parking, and other tenants. Once that "Opening Date" arrived, plaintiffs argue, the city had an obligation to provide them with leased space in a completed mall.

▪ Interpretation of a contract is a matter for the court, unless it is dependent upon extrinsic evidence or upon a choice among reasonable inferences from extrinsic evidence, while, "[g]enerally, questions of performance or breach are for the jury." *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993). Extrinsic evidence is admissible as an aid to contract interpretation when it throws light on the parties' situation, antecedent negotiations, attendant circumstances, and the objectives which the parties were trying to attain." *Id.* (holding that contract issues were properly submitted to the jury). Unless the contract is ambiguous, the parties' intent is determined from the language of the contract. *Power Eng'g & Mfg., Ltd. v. Krug Int'l*, 501 N.W.2d 490, 493 (Iowa 1993). Consequently, where the intent of the parties is expressed in clear and unambiguous language, the contract is enforced as written. *Iowa Fuel & Minerals v. Board of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). "Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper. The test for ambiguity is an objective one: 'Is the language fairly susceptible to two interpretations?'" *Id.* (citations omitted). Any ambiguities in a contract are construed against the drafter. *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 375 (8th Cir.1983) (citing *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979); *accord Truelsen v. European Health Spa of Nebraska*, 561 F.2d 169, 170 (8th Cir.1977) (per curiam) (Nebraska law); *Telex Corp. v. Balch*, 382 F.2d 211, 216 (8th Cir.1967) (Minnesota law); *Village Supply Co. v. Iowa Fund, Inc.*, 312 N.W.2d 551, 555 (Iowa 1981)).

▪ There is nothing in the language of the lease to clarify whether the term "Opening Date" was a reference to the date that the "Premises" were to open or to the date that "The Centre" was to open. The court finds that, under these circumstances, the language in the lease was subject to more than one reasonable interpretation. Thus, the court finds that this language is ambiguous.

### 2. Should any ambiguity be resolved against the city?

▪ The lease in this case was a form lease provided by Sioux Center. Under Iowa law, doubts concerning the meaning of an agreement are to be construed against its drafter. *Village Supply*, 312 N.W.2d at 555. Additionally, the Iowa Supreme Court has held that where an agreement form is furnished by one party, it must be construed in favor of the other party. *Archibald v. Midwest Paper Stock Co.*, 176 N.W.2d 761, 764 (Iowa 1970) (holding that "agreement form ... furnished by lessee ... must be construed most favorably to lessor"). The form lease in this case was drafted by the defendant.

▪ Sioux Center points out that during lease negotiations, the DeJongs were represented by counsel and had the assistance of a consultant, Cotter & Company. The city also notes that the lease was bargained for and negotiated at arms length, and that terms were added to and stricken from it during the negotiation process. However, the language in question was undisputedly provided by the city, and was, under the circumstances in this case, ambiguous. Accordingly, the language should be construed against Sioux Center. *Rural Water Sys. No. 1 v. Sioux County*, 272 N.W.2d 466, 468 (Iowa 1978) ("Any ambiguity must be resolved against it as the party selecting the language used.") (citing *Rector v. Alcorn*, 241 N.W.2d 196, 202 (Iowa 1976); *Archibald v. Midwest Paper Stock Co.*, 176 N.W.2d 761, 764 (Iowa 1970)).

In reviewing the city's motion for judgment as a matter of law, the court will view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992); *see Neely v. American Family Mut. Ins. Co.,* 930 F.Supp. 360, 368–69 (N.D.Iowa 1996). It was not improper to allow the jury to decide the contract issue with the aid of extrinsic evidence. *Iowa–Illinois Gas & Elec.,* 497 N.W.2d at 825; *Taylor Enter., Inc. v. Clarinda Prod. Credit Ass'n,* 447 N.W.2d 113, 115 (Iowa 1989). In any event, the court agrees with the jury's determination.

### 3. Was the DeJongs' interpretation reasonable?

■ The court believes that the DeJongs' interpretation of the lease, i.e., that it included a promise by the city to have the shopping center substantially complete by September 1, 1991, was reasonable as a matter of law. Furthermore, in returning their verdict in favor of the DeJongs on Count IV, the jury made a factual finding that the DeJongs' interpretation of the lease was reasonable. The evidence supports the jury's verdict on this element of plaintiffs' claim, and the court will not disturb this finding.

### 4. Did Sioux Center breach the terms of the lease?

■ There is no dispute that the shopping center was not completed by September 1, 1991, or even completed by "approximately" that date. The court finds that the "Opening Date" of the shopping center was not until at least the spring of 1992. In fact, the Grand Opening was not held until late 1992. If the jury felt that the DeJongs reasonably believed that the "Opening Date" language in the lease referred to the opening date of the shopping center, then the jury had ample evidence to support its verdict that the city breached [6] this term of the contract.

---

6. Instruction No. 26 stated:
  Plaintiffs claim that defendant breached the contract (Exhibit No. 1) by failing to perform the contract provision which states: "Opening

## III. OTHER ISSUES

### A. Instruction No. 27

Sioux Center argues that Jury Instruction No. 27 should not have been given. Instruction No. 27, which is taken from Iowa Civil Jury Instruction 2400.5, "Terms—Interpretation" (1986), states:

### FINAL INSTRUCTION NO. 27—CONSTRUCTION OF CONTRACT

In determining the terms of the contract you may consider the following:

1. The intent of the parties along with a reasonable application of the surrounding circumstances.

2. The intent expressed in the language used prevails over any secret intention of either party.

3. The intent may be shown by the practical construction of a contract by the parties and by the surrounding circumstances.

4. The meaning of a contract is the interpretation a reasonable person would give it if they were acquainted with the circumstances both before and at the time the contract was made.

5. Ambiguous language in a written contract is interpreted against the party who selected it.

The city advances no reason or support for this contention in either its motion or briefs for this claimed error except to state that the construction of the lease is the province of the court, and not the jury. (Def.'s Br. in Supp. of Post Trial Mots. (Docket No. 104), at 26.) The court has construed the lease as a matter of law in this order. Accordingly, the city's objection is moot.

### B. Instruction No. 31

Sioux Center argues that Jury Instruction No. 31 incorrectly states the law. Instruction No. 31 states:

Date: Approximately 1 September 1991." A breach of the contract occurs when a party fails to perform a term of a contract.

## FINAL INSTRUCTION NO. 31—WAIVER

The right to insist on performance can be given up. This is known as a "waiver." Plaintiffs may demonstrate waiver directly by their actions, or you may conclude from plaintiffs' conduct and the surrounding circumstances, that a waiver was intended.

For defendant to prevail on its affirmative defense of waiver, defendant must prove the following elements by the greater weight of the evidence:

1. **Plaintiffs held a right under a contract or from a promise or fraudulent misrepresentation.**

2. **Plaintiffs had knowledge of the right.**

3. **Plaintiffs intentionally gave up the right.**

If defendant has proved all of these propositions with respect to a claim of plaintiffs, then you shall find for defendant on such claim.

■ In its brief in support of its post trial motions, the city complains that the waiver defense outlined in this instruction, as it applies to the DeJongs' estoppel claim, should have included language "to advise the jury of the allegation upon which the defendant was relying...." *Id.* Since the court has overturned the jury's verdict on the promissory estoppel count, this objection is moot. Furthermore, a court is not required to include factual allegations proposed by a party in jury instructions to correctly state the law. *Board of Water Works Trustees of the City of Des Moines v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983) (holding that "the trial court is not bound to give the party's requested instruction. A district judge has broad discretion in framing the form and language of the charge to the jury, and as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal.") (citing *Corey v. Jones,* 650 F.2d 803, 806 (5th Cir.1981); *Brown v. Cedar Rapids & Iowa City Ry. Co.,* 650 F.2d 159, 165 (8th Cir.1981); *E.I. du Pont de Nemours & Co. v. Berkley & Co.,* 620 F.2d 1247, 1271 (8th Cir.1980); *Chavis v. Finnlines Ltd.,* 576 F.2d 1072, 1084 (4th Cir.1978); *Bern v. Evans,* 349 F.2d 282, 287–88 (8th Cir.1965); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2552, at 627 (1971)). The city was free to argue the facts to the jury in its final argument. The city has advanced no reason nor cited to any authority to support its argument that this instruction was erroneous. The court believes that this instruction was correct as given.

### C. Excluded Video Evidence

■ Sioux Center argues that the court erred in excluding the audio portion of videotape evidence offered at trial. The evidence in question was cumulative, had little probative value, and was likely to confuse and unfairly prejudice the jury. The parties had objections to different parts of the audio, and the court determined that it was impractical to edit the audio from this part of the tape to make it properly presentable to the jury. The court believes it correctly excluded the evidence.

### D. Damages

■ Sioux Center generally objects to the damages awarded by the jury to the DeJongs. The court believes that the damages awarded were a fair reflection of "the amount of money that plaintiffs lost in operating the hardware store, including amounts invested and amounts borrowed." Jury Instruction No. 30. The court believes that this objection is without merit.

### IV. CONCLUSION

Therefore, the court finds the following:

1. The defendant's motion for judgment as a matter of law is **granted** on Count III, the promissory estoppel claim.

2. The defendant's motion for judgment as a matter of law is **denied** on Count IV, the breach of contract claim.

3. The defendant's motion for judgment as a matter of law on its counterclaim is **denied.**

4. The defendant's motion for a new trial is **denied.**

**IT IS SO ORDERED.**

# APPENDIX A

## "THE CENTRE"
## LEASE

THIS LEASE is entered into by and between the LANDLORD and TENANT specified in the Basic Lease Information (hereinafter referred to as "Landlord" and "Tenant", respectively).

*BASIC LEASE INFORMATION*

| | |
|---|---|
| Date: | |
| Landlord: | The Incorporated City of Sioux Center, Iowa |
| Tenant: | DeJong True Value Hardware, Inc. |
| Tenant's Trade Name: | DeJong True Value Hardware |
| Shopping Center: | "THE CENTRE" Sioux Center, Iowa |

**Article / Page**

| | | |
|---|---|---|
| | Premises: | Space #304 |
| | Square footage of Premises: | Approximately 5,686 Square Feet |
| 2/1 | Term: | Ten (10) Years |
| | Term Expiration: | January 31, 2002 |
| 4/2 | Use: | Hardware and related items |

9/3  Rent Commencement Date: Approximately 1 September 1991 or 60 days after Landlord turns building over to tenant for sec up.

Opening Date: Approximately 1 September 1991

9/3  Minimum Annual Rental:

1. Tenant shall pay to Landlord the sum of $2.71 dollars per square foot per year from Commencement Date ____, 1991 through 31 January ____, 199 7.

2. The Minimum Annual Rental shall be increased to Four Dollars ($4.00) dollars per square foot on February 1 , 199 7, through January 31 , 199 8.

3. The Minimum Annual Rental shall be increased to Four Dollars and 50/100 ($4.50) dollars per square foot on February 1 , 1998 , through January 31 , 2002.

4. The Minimum Annual Rental shall be increased to See Options ____ dollars per square foot on ____, ____ through ____, ____.

10 / 4  Percentage Rental:

1. Commencing on the Opening Date and ending on January 31, 1995 , Tenant shall pay Landlord an amount equal to One-Half percent (1.5%) of all "net sales" (as defined in Article 10 herein) in excess of Five Hundred Thousand and no/100 Dollars ($ 500,000 ) during any Lease year.

I

# BASIC LEASE INFORMATION (Continued)

Article / Page

**10 / 4**  Percentage Rental:

2. Commencing on _1 February 1995_ and ending on _31 January 1998_ Tenant shall pay Landlord an amount equal to _one & one-half_ percent ( _1.5_ %) of all "net sales" (as defined in Article 11 herein) in excess of _Five Hundred Fifty Thousand_ Dollars ($_550,000_) during any Lease year; and

3. Commencing on _1 February 1998_ and ending on _31 January 2002_ Tenant shall pay Landlord an amount equal to _Three & one-half_ percent ( _3.5_ %) of all "net sales" (as defined in Article 11 herein) in excess of _Seven Hundred Thirty-one_ Thousand Fifty-Seven Dollars ($_731,057_) during any Lease year; and

4. Commencing on _Option Periods_ and ending on _Termination of Lease_ Tenant shall pay Landlord an amount equal to _Three & one-half_ percent ( _3.5_ %) of all "net sales" (as defined in Article 11 herein) in excess of _Natural Break Point_ Dollars ($_____) during any Lease year.

**13 / 5**  Real Estate Taxes:  _Pro Rata_

**20 / 9**  Common Area:

1. Commencing on the Opening Date and ending on _31 January 1995_, Tenant shall pay Landlord its pro-rata share of _Zero_ per cent ( _-0-_ %) of all Common Area Charges (as defined in Article 20 herein).

2. Commencing on _1 February 1995_ and ending on _31 January 1996_, Tenant shall pay Landlord its pro-rata share of _Twenty_ percent ( _20_ %) of all Common Area Charges (as defined in Article 20 herein); and

3. Commencing on _1 February 1996_ and ending on _31 January 1997_ Tenant shall pay Landlord its pro-rata share of _Forty_ percent ( _40_ %) of all Common Area Charges (as defined in Article 20 herein); and

4. Commencing on _1 February 1997_ and ending on _31 January 1998_, Tenant shall pay Landlord its pro-rata share of _Sixty_ percent ( _60_ %) of all Common Area Charges (as defined in Article 20 herein); and

5. Commencing on _1 February 1998_ and ending on _31 January 1999_, Tenant shall pay Landlord its pro-rata share of _Eighty_ percent ( _80_ %) of all Common Area Charges (as defined in Article 20 herein); and

6. Commencing on _1 February 1999_ and ending on _31 January 2002_, Tenant shall pay Landlord its pro-rata share of _One Hundred_ percent ( _100_ %) of all Common Area Charges (as defined in Article 20 herein).

| 32 / 16 | Tenant's Address for Notices: | #304 Centre Mall<br>Sioux Center, IA  51250 |
| 32 / 16 | Landlord's Address for Notices: | 337 North Main Avenue<br>Sioux Center, IA  51250 |
| 36 / 17 | Marketing Fund: | See Addendum — Exhibit G |
| 36 / 17 | Grand Opening Contribution: | $1,400.00 |
| 36 / 17 | Landlord's Contribution: | Twenty-five (25%) percent |
| | Period of Completion for Tenant's Work: (Expiration Date) | Approximately 1September 1991 |
| 37 | Deposit: | $1,776.87 |

In the event of any conflict between the Basic Lease Information and the Lease Document, the Basic Lease Information shall control.

III